Margie O. BOETTCHER, Respondent,

v.

James C. BOETTCHER, Appellant.

No. WD 47404.

Missouri Court of Appeals,
Western District.

Dec. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied
March 22, 1994.

Thomas M. Dunlap, Fulton, for appellant.

Lori J. Levine, Jefferson City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

James Boettcher disputes the trial court's division of property in its decree of February 9, 1993, dissolving his marriage to Margie Boettcher. We affirm on the basis of facts found by the trial court and supported by the record.

The Boettchers married on January 11, 1967. It was a second marriage for both. They each had custody of children from a former marriage. Margie Boettcher had four daughters, including G.B. and T.B. James Boettcher had a son and a daughter. On September 11, 1970, a child was born to the marriage.

The Boettchers separated during November 1986 when Margie Boettcher discovered

that James Boettcher had been sexually-abusing G.B. for many years. He had mentally, emotionally, and physically abused all the children, and his abuse of G.B. began when she was 11 years old by exposing her to pornography. Soon afterward, James Boettcher exposed himself to G.B. on a few occasions and later coerced G.B. to have oral sex with him. He raped G.B. when she was 16 years old. He continued to have sexual relations with G.B. routinely until she was 20 years old. At one point, he impregnated her and took her out of state for an abortion under an assumed name. He also exposed himself to some of the other children and forced T.B. to look at pornography and to watch his sexual acts with G.B.

G.B. has received counseling since 1985. She believed that she was trapped and could not escape her step-father's continued abuse. He repeatedly told her that her mother would die if she found out, so G.B. did not tell her mother until G.B. was 28 years old and had left the Boettchers' house. G.B. has severe emotional pain as a result of James Boettcher's abuse.

Margie Boettcher was aware that James Boettcher was abusing the children emotionally and physically, but she did not know about the sexual abuse until G.B. told her. This knowledge caused her extreme emotional stress, and she also is receiving counseling.

Margie Boettcher was earning $21,000 a year. James Boettcher was earning approximately $84,000 a year. Margie Boettcher obtained her high school graduate equivalency diploma while the parties were married. James Boettcher has received a master's degree. During their marriage, Margie Boettcher served as homemaker and primary care-giver for the seven children. She supplemented the family's income by babysitting in the home. Because of these factors and James Boettcher's misconduct, the trial court divided the marital property in Margie Boettcher's favor.

In this appeal, James Boettcher first claims that the trial court erred in ordering him to pay Margie Boettcher $25,000 in two installments. The trial court did not specify the payments' purpose, but both parties, in their proposed asset divisions, suggested giving Margie Boettcher a cash award. James Boettcher avers that the $25,000 was maintenance in gross because the court did not order, as he suggested, a corresponding reduction of in the assets awarded to her.

James Boettcher correctly asserts that maintenance in gross is not permissible because it does not anticipate the receiving party's death or remarriage or other significant change in circumstances. *Cates v. Cates,* 819 S.W.2d 731 (Mo. banc 1991). Nonetheless, lump sum payments are permissible in property division to make an equitable division. Margie Boettcher faced depressed economic circumstances. The trial court found James Boettcher guilty of extreme marital misconduct. Trial courts are permitted to take such factors into account when dividing property. Section 452.330.1, RSMo Supp.1991.[1] The value of the property given to one party can be much higher than the value given to the other if the parties' conduct warrants it. *W.E.F. v. C.J.F.,* 793 S.W.2d 446 (Mo.App.1990).[2] James Boethcher's conduct and Margie Boettcher's economic circumstances warranted the trial court's division of property.

On the basis of *Manor v. Manor,* 682 S.W.2d 93 (Mo.App.1984), James Boettcher argues that, if the $25,000 cash award was a property division, the trial court had a duty to decrease the assets awarded to Margie Boettcher. *Manor* does not aid James Boettcher because the trial court in *Manor* did not find misconduct. The *Manor* court expressed confusion over the purpose of the cash award and remanded the case to the

1. That statute provides, "In a proceeding for dissolution of the marriage ..., the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including: ... [t]he economic circumstances of each spouse at the time the division of property is to become effective[; and] ... [t]he conduct of the parties during the marriage[.]"

2. The court in *W.E.F. v. C.J.F.,* divided the property by giving 72 percent to one party and 28 percent to the other.

trial court for a clarification of the cash award's purpose.

In this case, the trial court's intention to take into account James Boettcher's conduct and Margie Boettcher's economic circumstances is clear. The cash award is valid.

James Boettcher next complains about the trial court's division of his retirement plan. James Boettcher began the retirement plan 37 months before marrying Margie Boettcher. He complains that although the trial court held that $6640 of the plan was his separate property, it divided the $6640 equally. He argues that the equal division demonstrated that the trial court did not set aside his separate, nonmarital portion.

■■ Though logical, his argument fails to take into account the trial court's handling of the other investment plans. The trial court divided James Boettcher's employee stock ownership plan, his 401(k) plan, and his deferred compensation by giving James Boettcher 40 percent of them and by giving Margie Boettcher 60 percent. Dividing the other investment plans 60–40 was not an abuse of discretion because of James Boettcher's misconduct. By giving James Boettcher an extra 10 percent of the pension plan, the trial court apparently was awarding him his separate, nonmarital property. We do not discern an abuse of discretion. So long as the trial court acts within sound discretion, we will accord it flexibility in making an equitable division. *Weiss v. Weiss,* 702 S.W.2d 948 (Mo.App.1986) ("the trial court [is vested] with broad discretion [in dividing marital property] and interference therewith at the appellate level should occur only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of judicial discretion.").

■ James Boettcher also challenges the amount of the trial court's maintenance award to Margie Boettcher. He states that

court made three errors: (1) that maintenance is not justified; (2) it did not reduce the award although one of Margie Boettcher's daughters became emancipated during the divorce proceedings; and (3) the award was based on medical expenses covered by insurance. We will affirm a trial court's maintenance award unless it is against the clear weight of the evidence. *Lefever v. Lefever,* 840 S.W.2d 873 (Mo.App.1992). We will reduce the amount of maintenance only if it is patently unwarranted. *Liberty v. Liberty,* 826 S.W.2d 381 (Mo.App.1992).

The guidelines for maintenance are found in § 452.335.1, RSMo Supp.1988.[3] The trial court followed the statute's criteria. Margie presented evidence of her needs. Using the statute's language, the trial court found that the marital property given to Margie Boettcher did not meet "her reasonable needs."

James Boettcher also argues that the amount of maintenance was wrongfully calculated to include an emancipated child. We disagree. The court stated that it was aware that the child would soon be emancipated but based the maintenance amount on independent factors, including James Boettcher's conduct, the parties' income, the nature of the property divided, and Margie Boettcher's emotional condition caused by James Boettcher's conduct. We do not discern an abuse of discretion.

James Boettcher also contends that the maintenance award was incorrect because it was based on Margie Boettcher's medical needs covered by insurance. The record contains ample evidence that not all her needs were covered by insurance. We find no error.

James Boettcher also contends that the trial court did not have the authority to require him to pay his wife's health insurance, and he argues that, even if the trial

---

**3.** That statute says, "In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance: (1) [l]acks suffi-

cient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) [i]s unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

court could order it, the court erred in not putting a time limit on his obligation. We disagree.

A trial court can require health insurance if it sets forth any criteria to determine the extent or cost of coverage. *Liberty,* 826 S.W.2d at 381. Not putting a time limit on the payments was not error because maintenance can be modified when a change in circumstances occurs, and the insurance payment should be deemed to be a part of the maintenance award.

James Boettcher challenges the trial court's valuation and division of the marital property. He states that the court's decision was not based on substantial evidence. Margie Boettcher offered testimony and written statements as to the value of the property in dispute. The court also found that James Boettcher was guilty of depleting the value of the property. Credibility of evidence is within the trial court's sound discretion. *Wooten v. DeMean,* 788 S.W.2d 522 (Mo.App.1990). Substantial evidence supported the trial court's decision.

James Boettcher's final point challenges the trial court's award of attorney fees to Margie Boettcher. He contends that Margie Boettcher was given sufficient property from which to pay an attorney.

A trial court has broad discretion in awarding attorney fees. Section 452.355.1, RSMo Supp.1992.[4] We must presume an award of attorney fees to be correct. We will reverse an award of attorney fees only when it is manifestly unreasonable. *Mabon v. Mabon,* 833 S.W.2d 488 (Mo.App.1992). We do not discern an abuse of discretion in this case, especially given the lack of liquidity of the property awarded to Margie Boettcher.

We affirm the judgment of the trial court.

All concur.

---

**4.** This statute provides, "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount ... for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment."