Brenda K. SCHROEDER,
Petitioner/Respondent/Cross–Appellant,

v.

David J. SCHROEDER,
Respondent/Appellant/Cross–Respondent.

Nos. 68350, 68478.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 4, 1996.

B. Thomas Kearns, St. Louis, for David Schroeder.

William P. Grant, Dorothy D. Danforth, Clayton, Thomas H. Nations, St. Louis, for Brenda Schroeder.

CRANDALL, Judge.

Husband, David J. Schroeder, appeals from the decree of dissolution of his marriage to wife, Brenda K. Schroeder. Wife also appeals. We affirm.

Husband and wife were married in November 1988 and separated in February 1995. The only child of the marriage was wife's natural son born in January 1978, whom husband adopted during the marriage. Wife's other child, born of a previous marriage, also lived with the parties.

At the time of the dissolution, wife was 34 years of age. She was a high school graduate. Before the marriage and for some time thereafter, she worked as a hair stylist and earned about $300.00 to $600.00 per week. She also trained as an airline reservationist, but was never employed in that capacity. In 1991, she went to work for husband as a real estate appraiser and became licensed. She earned between $6,000.00 and $7,000.00 per year working for husband. At the time of the dissolution, she was no longer employed by husband; and her attempts to secure employment as a real estate appraiser had proven unsuccessful. She testified she was unsure of how long it would take her to become financially independent while pursuing a career as an appraiser; but in response to questions by the court about how long she believed it would take, indicated at least three years. She anticipated that her yearly income from working as a real estate appraiser would equal about $25,000.00.

Husband was 56 years of age. He had worked as a real estate appraiser and broker for over 30 years. He operated his own appraisal business and was the sole shareholder of the stock of that corporation. His annual incomes for the three years preceding the dissolution were $75,000.00, $90,000.00, and $85,000.00. Prior to 1994, he had about eight people working for him. When the business experienced a downward trend in 1994, he reduced his staff and his income dropped to about $56,000.00.

During the six-year marriage, the parties resided in a large, two-story home in South St. Louis County. Husband purchased the home for $137,500.00 in 1986, prior to the marriage. In 1990, in the course of refinancing the home, husband deeded the property to himself and wife as tenants by the entirety. The parties made several improvements to the home, including a swimming pool, fence, landscaping, concrete work, drapes, and wallpaper. The court valued the house at $190,000.00, with an outstanding mortgage of $114,000.00. There were also five parcels of rental property, titled either solely in husband's name or jointly in his and wife's names. The indebtedness on the rental properties equalled or exceeded their fair market values; and the rental properties operated at a loss. In addition, the parties owned stock in three different companies, the total value of the shares of stock being reduced by indebtedness to a brokerage company.

In its decree of dissolution, *inter alia*, the court set aside certain property to each party

as separate and divided the marital assets. The separate property awarded to wife and to husband consisted of jewelry and personal items. In addition, the court awarded husband all of the stock of his business and all of the rental property, regardless of whether it was classified as separate or marital property. The court awarded to wife certain shares of stock valued at $1,365.00; and to husband the shares of two stocks valued at $2,150.00 and $10,925.00, the latter subject to indebtedness of $8,500.00. The court ordered the marital home sold and wife given 25 percent of the profits from the sale. The court found that husband's monthly income was $5,446.80, and imputed income of $750.00 per month to wife. The court also ordered husband to pay child support of $690.00 per month, maintenance of $600.00 per month to wife for a period of three years, and $1,500.00 to be applied to wife's attorney's fees.

Appellate review of a court-tried case is guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

### MAINTENANCE

 In husband's first point, he contends the trial court erred in awarding maintenance to wife because she was capable of being self-sufficient at the time of the dissolution. In wife's first two points of her cross-appeal, she challenges the court's limiting the duration of maintenance to three years and setting the maintenance at $600.00 per month.

 Section 452.335, RSMo (1994) governs awards of spousal maintenance. Section 452.335.1 sets forth the threshold test for an award of maintenance. The statute permits the court to grant maintenance to a spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for his or her reasonable needs, and (2) is unable to support himself or herself through appropriate employment. The spouse seeking maintenance is required to show need before maintenance may be awarded. *L.A.L. v. L.L.*, 904 S.W.2d 50, 53 (Mo.App. E.D.1995). Although § 452.335.2 sets forth the statutory factors which the court is to consider in determining the amount and duration of maintenance, those factors are only considered after the court finds that the threshold test is satisfied and allows an award of maintenance. *Wallace v. Wallace*, 839 S.W.2d 354, 357 (Mo.App. W.D. 1992).

 Although the thrust of husband's argument on appeal does not address the first prong of the threshold test, we find that there was substantial evidence that wife did not have sufficient property to meet her reasonable needs. Wife had no separate property which was income producing, nor was the marital property awarded to her sufficient to meet her needs for more than the immediate future. Further, wife was not required to deplete her own assets or to consume the marital property before being entitled to maintenance. *See Wallace*, 839 S.W.2d at 357.

 Husband's claim of error regarding maintenance focuses on the second prong of the threshold test; namely, whether wife had the ability to meet her needs through appropriate employment. Wife was unemployed at the time of dissolution. The law in Missouri is that unemployment is not enough to require an award of maintenance and that the parties are encouraged to become self-sufficient by fulfilling their affirmative duty to seek employment. *Wallace*, 839 S.W.2d at 357. At the time of the dissolution, however, wife was actively seeking employment as a real estate appraiser. She had switched to this field during the marriage with the encouragement and assistance of her husband. Although she had previous training both as a hair stylist and as an airline reservationist, her return to a job in either of those areas was doubtful—she had not been a stylist for years and had never been employed as a reservationist. Lastly, husband's assertion that wife was capable of being self-sufficient at the time of dissolution is incredulous, given the fact that when she worked for him as a real estate appraiser she only earned between $6,000.00 and $7,000.00 per year. There was substantial evidence that wife could not support herself through appropriate employment at the time of the dissolu-

tion. Wife thus met the threshold test to determine that she was eligible for maintenance.

■ After determining that maintenance is appropriate, the trial court next considers the ten factors outlined in § 452.335.2 in setting the amount and duration of maintenance. The trial court is not required to specifically address each statutory factor. *McCallister v. McCallister*, 809 S.W.2d 423, 429 (Mo.App.1991). The factors the trial court must consider are as follows:

(1) the financial resources of the party seeking maintenance and his ability to meet his needs independently;

(2) the time necessary to acquire sufficient education or training to find appropriate employment;

(3) the comparative earning capacity of each spouse;

(4) the standard of living established during the marriage;

(5) the obligations and assets, including the marital and separate property;

(6) the duration of the marriage;

(7) the age and physical and emotional condition of the spouse seeking maintenance;

(8) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) the conduct of the parties during the marriage; and

(10) any other relevant factor.

The trial court not only has broad discretion in applying the statutory factors, but it determines the witnesses' credibility and evaluates the merits of each party's expense claims. *Jones v. Jones*, 866 S.W.2d 507, 509 (Mo.App. E.D.1993). The court uses the factors in awarding maintenance to balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay. *Bixler v. Bixler*, 810 S.W.2d 95, 99–100 (Mo.App.1991).

Husband's comparative earning capacity, one factor in determining maintenance, was greater than wife's at the time of dissolution. The court found husband's monthly income to be about $5,446.00, while it imputed income to wife of $750.00 per month. Although husband testified that his appraisal business was experiencing a downward trend, the reduced salary he reported at the time of dissolution still far exceeded wife's earnings.

Although wife had an affirmative duty to seek adequate employment to enable her to become self-sufficient, there was evidence that wife would require time to become self-supporting in her chosen field. She needed time to find employment which corresponded to her skills and interests. She was relatively new to the real estate appraisal business, having started in that field in 1991 with husband's encouragement and assistance. Although wife testified that she could expect to have a yearly income of about $25,000.00 as a real estate appraiser, there was no evidence in the record that she would be receiving that anticipated salary in the immediate future. Her lack of experience, coupled with the downward trend in the real estate appraisal business reported by husband, does not auger well for wife's immediately securing a lucrative position as a real estate appraiser. Wife's earning capacity was thus uncertain at the time of dissolution.

Finally, there was substantial evidence that wife was unable to meet her needs independently at the time of dissolution, one of the other factors in determining maintenance. Wife listed her monthly expenses on her statement of income and expenses at $3,855.00, and the monthly income imputed to her by the court was $750.00. In contrast, husband listed his monthly expenses at $3,157.00, while the court determined his monthly income to be about $5,446.00. Thus, husband's income exceeded his expenses; and he was able to meet his own needs while meeting wife's, another factor in determining maintenance.

The trial court did not abuse its discretion in awarding wife maintenance. Husband's first point is denied.

■ In her cross-appeal, wife first charges that the amount of maintenance is too low. She argues the court incorrectly imputed income to her of $750.00 per month

in arriving at the $600.00 per month maintenance award.

 In making child support and maintenance determinations, the trial court may properly consider both past and present earnings. *Wagner v. Wagner*, 898 S.W.2d 649, 650 (Mo.App. E.D.1995). In certain circumstances, the court may impute an income to a spouse according to what he or she could earn by use of his or her best efforts to gain employment suitable to his or her capabilities. *Id.* Here, the court imputed income to wife in its calculation of child support on Form 14. Wife does not challenge the inclusion of that amount on Form 14. Having failed to do so, she has waived any claim of error relative to the court's consideration of imputed income in determining the amount of maintenance.

 In addition, we cannot say from the record that the trial court abused its discretion in awarding maintenance of $600.00 per month. The court was not required to accept wife's testimony about the amount of income she could earn or wife's assessment of her needs. *See Zillner v. Zillner*, 875 S.W.2d 585, 586 (Mo.App. W.D. 1994). Further, the court was not required to award maintenance which would meet all her needs. *See id.* The $600.00 per month award was within the allowable discretionary range for the trial court.

 We next address wife's challenge to the trial court's limiting the award of maintenance to a duration of three years. Although the trial court has broad discretion in determining the amount and duration of maintenance, a decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial conditions of the parties. *Tillock v. Tillock*, 877 S.W.2d 161, 163 (Mo.App. E.D.1994). Maintenance awards of limited duration cannot be based on mere speculation as to the future conditions of the parties. *Id.* Where the evidence indicates that the dependent spouse's financial prospects will not improve materially in the future and that the means of the spouse providing maintenance are not likely to decrease substantially, the trial court abuses its discretion when it speculates that the original maintenance award will no longer be required in the future. *Id.* at 162–163. There is a judicial preference for awards of unlimited maintenance. *Id.* at 163.

Here, the trial court questioned wife regarding the amount of time she would require to become self-sufficient:

THE COURT: Okay. You intend to remain in the area of real estate appraisal?

[WIFE]: Yes, I do.

THE COURT: Okay. And once again taking into consideration your experience and your background and your education and your abilities and all the circumstances that you wish to take into consideration, do you believe that the day will come when you will be self-sufficient?

[WIFE]: Yes.

THE COURT: When would you say that would be?

\* \* \* \* \* \*

[WIFE]: … I hope to have a job as soon as some company calls me. I'm just waiting for someone to call.

THE COURT: Well, do you believe that you'll be self-sufficient within five years?

[WIFE]: Yes, I do.

THE COURT: Do you believe that you'll be self-sufficient within three years?

[WIFE]: Yes.

THE COURT: Can you narrow it down any further than that?

[WIFE]: I have no idea, Your Honor.

Wife's counsel did not elicit further testimony from wife about what objective facts supported her subjective belief that she would be self-sufficient within three years.

Wife's own testimony clearly indicated that she thought she would be self-sufficient within three years. Her counsel did not attempt to further clarify wife's testimony. There was no abuse of the trial court's discretion in awarding wife maintenance consistent with her own testimony. *See, e.g., Buckner v. Buckner*, 912 S.W.2d 65, 68 (Mo.App. W.D. 1995) (no abuse of discretion for the trial court to award wife maintenance for a period of three years where she requested that maintenance). Wife's point regarding maintenance is denied.

## MARITAL RESIDENCE

 In his second point, husband challenges the trial court's award to wife of 25

percent of the marital residence, because it was his separate property. Husband testified he purchased the home prior to the marriage and intended it to be an investment for his retirement. He further stated that he placed wife's name on the title after the marriage merely to accommodate the lender when he refinanced the home.

■ When real estate is purchased by the husband and deeded to both the husband and wife as tenants by the entirety, a presumption arises that the husband intended to make a gift to or a provision for the benefit of his wife. *Tracy v. Tracy*, 791 S.W.2d 924, 926 (Mo.App.1990). Parol evidence is admissible to show the parties' intent, although the husband's declaration that he intended no settlement upon or gift to the wife, standing alone, is entitled to little weight. *Id.* at 927. Joint titling of real property creates a strong presumption of transmutation by gift, as does use of the property for marital purposes. *Id.* With these principles in mind, we consider whether husband sustained his burden to rebut the presumption of gift by clear and convincing evidence.

Husband's testimony that he did not intend to make a gift to wife when he titled the home in their joint names, by itself, did not rebut the presumption that he intended transmutation by gift. There was evidence that the residence served as the marital home for the parties and was occupied by them and the children living with them. That fact militates against husband's assertion that the house was purchased solely as an investment. *See Tracy*, 791 S.W.2d at 929. In addition, substantial improvements were made to the home during the marriage by the parties; and the parties expended marital funds for those improvements. Given the evidence, the court properly classified the residence as marital property and awarded wife a portion thereof. Husband's second point is denied.

## MARITAL PROPERTY

■ In the final point of her cross-appeal, wife contends the trial court erred in dividing the marital assets on the "sole basis of the contribution of each spouse to the acquisition of the marital property," in lieu of considering all the statutory factors enumerated in § 452.330, RSMo (1994).

Nothing in the record indicates that the trial court failed to take into consideration the factors enumerated in § 452.330. Neither party requested the trial court to make findings of fact and conclusions of law in conformity with Rule 73.01. A division of marital property is not deficient for the trial court's failure to announce that it has arrived at the division in accordance with the requisite statutory factors. *Lehmann v. Lehmann*, 750 S.W.2d 724, 726 (Mo.App.1988). Fact issues are considered to have been resolved according to the result reached by the trial court. *Id.* Wife's point is denied.

The decree is affirmed.

CRAHAN, P.J., and DOWD, J., concurs.