Thomas Edward GRIFFIN, Jr., Appellant,

v.

Marilyn Sue GRIFFIN, Respondent.

No. WD 55732.

Missouri Court of Appeals,
Western District.

March 9, 1999.

Gary Lee Stamper, Columbia, for appellant.

Leslie Ann Schneider, Columbia, for respondent.

Before BRECKENRIDGE, P.J., C.J., ULRICH, J., and HOWARD, J.

ULRICH, J.

Thomas Edward Griffin, Jr. (Husband) appeals the judgment of the trial court dissolving his marriage to Marilyn Sue Griffin (Wife). He claims that the trial court abused its discretion in dividing the marital property and awarding Wife maintenance of $1300 per month. The judgment of the trial court is affirmed in part and reversed and remanded in part.

Husband and Wife were married on June 20, 1970. During most of the marriage, Husband was a self-employed carpet installer. Approximately three and a half years prior to the trial, he began working at 3M as a copper-plater operator for $14 an hour. Husband earned $30,685 in 1995, $32,950 in 1996, and $41,000 in 1997. He expected to earn between $35,000 and $38,000 in 1998. Wife worked as a keypunch operator at the University of Missouri–Columbia prior to the marriage and continued the employment until 1974 when the couple's first child was born. After the birth of the child, Wife stayed at home to care for the children. A second child was born in 1978. Approximately ten years prior to trial, Wife began sewing and selling decorative craft items part-time. Three years before trial, she began working part-time for Hallmark Cards installing new card displays. Wife earns $6.25 an hour doing display installations, but the employment is very sporadic. At the time of trial, Wife was earning $282 per month from her two part-time jobs.

At the end of 1996, Husband met another woman at work and began spending time with her away from their place of employment. On Valentine's Day 1997, he gave her a box of chocolates. Then in March, Husband told Wife he wanted a divorce. Husband moved out for approximately three

weeks in April. After a brief reconciliation, Husband moved out permanently on June 20, 1997, the couples' 27th wedding anniversary. In November 1997, he began living with his girlfriend.

Husband filed his petition for dissolution of marriage on July 31, 1997. Following trial, the trial court entered a decree of dissolution dissolving the parties' marriage. The trial court divided the marital property consisting of the family home and acreage, two automobiles, personal property, a certificate of deposit (CD), shares of 3M stock, Husband's employment benefits at 3M, and a life insurance policy; awarded Wife maintenance of $1300 per month; and ordered Husband to pay $2080 of Wife's attorney's fees. This appeal by Husband followed.

### Standard of Review

■■■■ A decree of dissolution of a trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Morris v. Morris*, 951 S.W.2d 739, 741 (Mo.App. W.D.1997). A trial court has wide discretion in dividing marital property. *Morris*, 951 S.W.2d at 741. An appellate court will only interfere with a trial court's division of marital property if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Id.* A trial court also has considerable discretion in determining whether a maintenance award is appropriate. *Ellis v. Ellis*, 970 S.W.2d 416, 417 (Mo.App. W.D.1998). In reviewing a trial court's determination regarding maintenance, an appellate court must view the evidence in a light favorable to the decree disregarding contrary evidence. *Id.* at 418. A reviewing appellate court must also defer to the trial court's findings even if the evidence could support a different conclusion because the trial court is in better position to judge witness credibility, sincerity, and character and other intangibles not revealed in a transcript. *Id.* A trial court's decision regarding maintenance will not be reversed absent an abuse of discretion. *Id.* at 417.

### I. Property Division

■■■ In his first point on appeal, Husband claims that the trial court abused its discretion in dividing the marital property 76%–24% in favor of Wife. He contends that the court placed an inordinate emphasis on his misconduct late in the marriage. He suggests that an offsetting, cash judgment should have been awarded to him to equalize the property division.

■■■ Section 452.330, RSMo Cum.Supp. 1997, directs a trial court to divide marital property in a just manner after considering all relevant factors including:

> The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

> The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

> The value of the nonmarital property set apart to each spouse;

> The conduct of the parties during the marriage; and

> Custodial arrangements for minor children.

§ 452.330.1, RSMo Cum.Supp.1997; *Holt v. Holt*, 976 S.W.2d 25, 27 (Mo.App. W.D.1998). A just division, however, is not necessarily an equal division, and the award of a higher percentage of the marital assets to one spouse is not a per se abuse of discretion. *Morris*, 951 S.W.2d at 741. Disproportionate divisions of marital property are routinely affirmed. *Id.*

■■■■ In dividing marital property, a trial court must follow the two major guiding principles inherent in section 452.330:(1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) that property division should be utilized as a means of providing future support for an economically dependant spouse. *Holt*, 976 S.W.2d at 28. "[Section 452.330.1] gives the trial court great flexibili-

ty and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider." *Id.* (quoting *In re Marriage of Wright*, 788 S.W.2d 350, 354 (Mo.App. S.D. 1990)).

In dividing the marital property, the trial court awarded Wife the marital home (subject to a mortgage), an automobile, and personal property totaling $82,558. Husband received an automobile, a CD,[1] 3M stock, a life insurance policy, 3M Savings–Plus Plan, personal property, a tractor, and a pop-up trailer totaling $29,145. This division of marital property was not an abuse of discretion. At the time of trial, Husband was 47 years old and worked at 3M earning between $35,000 and $38,000 a year. As part of the property distribution, he received the parties' interest in 3M stock and his employee benefit plan. In contrast, Wife was 47 years old at the time of trial and had not been employed full-time for 24 years. She had a high-school education and no marketable skills. During the marriage, Wife was a homemaker and caretaker of the parties' two children. As such, she was economically dependent upon Husband. At the time of the dissolution, she was earning $282 per month selling craft items and occasionally installing Hallmark Cards displays. She did not receive any retirement benefits in the property distribution. Husband's economic circumstances, present and future, explicitly his salary and retirement benefits, appear considerably more stable than do Wife's.

■ Husband contends that the court placed an inordinate emphasis on his misconduct in making the disproportionate division of property. In its decree of dissolution, the court explained:

In its division of marital property, the Court is guided by RSMo. § 452.330 and has taken into account the contribution of each party to the acquisition of the marital property, the economic circumstances of each of the parties at the time the division of property is to become effective, the custodial arrangements for the minor child, and the conduct of the parties during the marriage.

The court's mentioning Husband's misconduct in its decree did not indicate that the court gave it any more weight to it than any other relevant factor in dividing the marital property. *See Hernandez v. Hernandez*, 872 S.W.2d 161, 165 (Mo.App. W.D.1994). The court enumerated several other factors in dividing the marital property including the economic circumstances of the spouses at the time the division is to become effective. The court, therefore, did not place undue emphasis on Husband's infidelity in making its property division.

■ Husband also contends that the court should have awarded an offsetting cash judgment to him to equalize the property division. Husband's testimony at trial, however, is in contradiction to this contention. Husband testified at trial that he wanted Wife to have the marital home, the largest asset in the marital estate, and that he did not want her to have to sell it to pay him a portion of the equity. Because Wife was not awarded any liquid assets, she would have had to sell the marital residence and acreage awarded to her to pay a cash award to Husband. Given Husband's testimony at trial and Wife's fragile economic circumstances at the time of dissolution, the trial court did not abuse its discretion in declining to award Husband an offsetting cash judgment. The trial court's division of marital property in the case was just. Point one is denied.

## II. Maintenance

In his second point on appeal, Husband claims that the trial court erred in awarding Wife maintenance of $1300 per month. He contends that the award does not reflect Wife's ability to contribute to her own needs and that the amount is wholly beyond his ability to pay.

■ A trial court may grant maintenance if the spouse seeking it lacks sufficient property, including marital property apportioned to him, to meet his reasonable needs, and if he is unable to support himself through appropriate employment.

---

1. Husband claims the CD no longer exists.

§ 452.335.1, RSMo 1994. The spouse seeking maintenance is required to show need before maintenance is awarded. *Schroeder v. Schroeder*, 924 S.W.2d 22, 25 (Mo.App. E.D.1996). "In a marriage where a spouse relies on the other spouse for monetary support, and is out of the marketplace, thereby injuring the spouse's marketable skills, this type of reliance may warrant an award of maintenance." *In re Marriage of Bowman*, 972 S.W.2d 635, 640 (Mo.App. S.D.1998)(quoting *Brock v. Brock*, 936 S.W.2d 882, 885 (Mo.App. E.D.1997)). Once the threshold test of need is satisfied, the trial court must set the amount and duration of the maintenance award after considering all relevant factors including:

> The financial resources of the party seeking maintenance, including the marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> The comparative earning capacity of each spouse;
>
> The standard of living established during the marriage;
>
> The obligations and assets, including the marital property apportioned to him and the separate property of each spouse;
>
> The duration of the marriage;
>
> The age, and the physical and emotional condition of the spouse seeking maintenance;
>
> The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
>
> The conduct of the parties during the marriage; and
>
> Any other relevant factors.

§ 452.335.2, RSMo 1994. In determining the amount of maintenance, the trial court must balance the reasonable needs of the spouse seeking maintenance against the other spouse's ability to pay. *Witt v. Witt*, 930 S.W.2d 500, 504 (Mo.App. W.D.1996). An award of maintenance should not exceed the paying spouse's capacity to provide. *Zlatic v. Zlatic*, 910 S.W.2d 818, 821 (Mo.App. E.D. 1995).

Husband does not dispute that Wife satisfied the threshold test of need. He, however, does challenge the amount of maintenance awarded by the court claiming that the award was beyond his ability to pay. The evidence at trial revealed that Husband's gross income per month was $3329. His net income was $2186 per month. Wife did not contest these figures. Paying $1300 to Wife in maintenance would leave Husband with only $886 per month to meet his needs. Husband's reported rent and utilities alone nearly equal this amount. Husband cannot afford to pay $1300 per month in maintenance and provide for his own essential needs. The record does not contain evidence to rebut the reasonable conclusion that the amount of the award in relationship to Husband's total income and essential needs will deprive him of the ability to satisfy those needs. The trial court's maintenance award to Wife of $1300 a month was, therefore, against the weight of the evidence. *Zlatic*, 910 S.W.2d at 821. The maintenance award is, therefore, reversed, and the case is remanded to the trial court for entry of an award after consideration of all relevant factors including Husband's ability to pay.

The judgment of the trial court is affirmed in part and reversed and remanded in part.

All concur.