Frank Joseph EVANS, Respondent,

v.

Carmen K. EVANS, Appellant.

No. WD 58236.

Missouri Court of Appeals,
Western District.

May 1, 2001.

Michael Harris, St. Joseph, for appellant.

Ronald Ray Holliday, St. Joseph, for respondent.

RONALD R. HOLLIGER, Judge.

Carmen Evans appeals from the amended judgment dissolving her marriage of 26 years to Frank Evans. There was one minor child nearing college age. Custody was awarded to Husband and there was no award of child support. No issue is raised on appeal concerning child custody or child support. Husband worked throughout the marriage for United Pharmical Company (UPCO), which was originally founded by his father. At the time of trial all stock in the company was held by Husband, his siblings and mother. Husband owned all but 10 of the outstanding voting shares of the company. He served as the company president and was paid a salary including bonuses of approximately $115,000 per year. Wife had virtually no outside employment during the marriage. She had a high school diploma but no further education or vocational training.

Wife contends that the trial court erred in the division of marital property in failing to consider the non-marital property of UPCO stock, awarding a disproportionate share of the marital property to Husband, in determining the amount of her necessary living expenses, in fixing the amount of periodic maintenance, and in structuring the maintenance payments to be made to

her by Husband. She also complains that the court abused its discretion in ordering Husband to pay only $1000 of her attorney's fees and expenses.

The trial court's judgment set aside to Husband non-marital property valued at $750,000. The gross value of marital property awarded to Wife was $676,333 (43.77 percent). The gross value of marital property awarded to Husband was $868,940 (56.23 percent). Husband was ordered to pay all of the marital debts totaling $173,393 including $16,634 for the Ford Expedition awarded to Wife and $44,676 representing the mortgage debt on the lake house awarded to Wife.[1] Husband was ordered to pay these debts by periodic payments to be "in the nature of spousal maintenance; non-modifiable and terminable upon the completion of their contractual terms." Husband was also directed to provide Wife health insurance coverage for a period of two years or until similar coverage was earlier available to wife at a reasonable cost. No other maintenance was initially awarded. The trial court later timely amended its findings of fact and issued an amended judgment, making two changes to the terms of the original judgment. The amended judgment again ordered Husband to provide health insurance, to pay the car and home mortgages "until the debts are retired." It characterized payment of these obligations as "in the nature of spousal maintenance, not dischargeable in bankruptcy, and deductible to the extent permitted by the Internal Revenue Code; said sums totaling $1,353 per month." The amended judgment also awarded $500 per month as periodic modifiable maintenance.

Wife raises five arguments about the amount and structure of the maintenance award: (1) the trial court failed to consider all of the statutory elements set forth in RSMo 452.335,[2] (2) the trial court erroneously imputed income to Wife in contradiction of its finding of no actual or imputed income in the Form 14 child support calculation, (3) the judgment contains conflicting and ambiguous language by incorporating marital debts included in the property division as maintenance, (4) the evidence adduced at trial did not support the trial court's imputation of income to wife, and (5) Husband received a double benefit by receiving credits for the payments he was ordered to make on certain debts as maintenance while also receiving credits for those debts in the property division. Husband answers that the trial court considered all necessary statutory factors and there was substantial evidence to support the court's finding that Wife's reasonable and necessary living expenses were $2,851 per month. Husband also argues that the trial court had sufficient evidence to support its imputation of income to Wife in its maintenance calculation. Husband does not respond to the argument made about an apparent conflict between the Form 14 and other findings regarding maintenance concerning imputation of income to Wife.

Wife argues that the language about payment of the mortgage and car debts until they are "retired" is vague and ambiguous. She asks what would be the meaning if either asset, for example, were destroyed and the casualty was covered by insurance. If the debt was satisfied by such a collateral source payment she queries whether the debt would thus be "re-

---

1. The judgment ordered payment of the apparently regular monthly payments for these debts. The judgment did not specify the amount of the monthly payment for each debt.

2. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise indicated.

tired" and that portion of the maintenance obligation terminated. She posits similar uncertainty in the event of a sale of the house or car that would result in existing liens being paid from sale proceeds. Would those debts be "retired," she asks, even though not paid by Husband. He offers no response to these arguments or questions. Wife points out that the property division awards Husband 56.23 percent of the marital property without allocation of the lake house and car debt. In other words, she contends that the marital property division looks equitable only if the value of the assets are "netted out" by the debts. She claims that Husband is then benefited again by the treatment of payment of those debts by him as maintenance. Husband also does not respond to this argument, beyond his suggestion that the trial court's division of property was appropriate within the statutory factors of § 452.335, RSMo.

Wife's second point claims that the division of property is not supported by substantial evidence, is against the weight of the evidence, erroneously declares or applies the law, and constitutes an abuse of discretion. Specifically, she complains that the distribution failed to consider the $750,000 in non-marital separate property received by Husband, and was not justified on the basis of marital misconduct because there was no evidence that any misconduct placed any additional burden upon Husband, and Husband was also guilty of misconduct. She points out that, disregarding debt, Husband received $1,618, 940 in marital and non-marital property while she received just $676,333. Husband responds that Wife received 49.3 percent of the marital property after adjustment for debts which was fair given the trial court's order that Husband pay for the debts on the automobile and lake home awarded to Wife. Husband does not respond to Wife's argument about misconduct. Wife argues

that Husband's response demonstrates that Husband is receiving a double benefit, as she claims, by having both the marital property division and the maintenance award include the payment obligation for the very same debts.

In her last point, Wife contends that the trial court's denial of attorneys fees in excess of $1,000 and her expert witness costs is an abuse of discretion and failed to properly consider the parties' respective financial resources. Husband responds that the trial court could have properly considered Wife's misconduct and did not abuse its discretion.

We reverse and remand because the debt payments are improperly characterized as maintenance and the court made inconsistent findings as to whether income should be imputed to Wife.

### Standard of Review

■ For each of the points raised above, the determinations of the trial court cannot be disturbed unless those determinations are not supported by substantial evidence, are against the weight of the evidence, or the trial court erroneously declared or applied the law. *Griffin v. Griffin*, 986 S.W.2d 534, 536 (Mo.App. 1999); *Allen v. Allen*, 961 S.W.2d 891, 893 (Mo.App.1998). The evidence within the record must be reviewed in the light most favorable to the judgment, and all evidence contrary to the judgment must be disregarded. *See Allen v. Allen*, 927 S.W.2d 881, 885 (Mo.App.1996). As the trial court is granted broad discretion in the division of property, granting maintenance, and awarding attorney fees, the trial court's decision will not be upset unless the trial court has abused its discretion in fixing those amounts. *See Griffin*, 986 S.W.2d at 536. We first discuss the trial court's treatment of the debt payments because it

demonstrates why we cannot resolve all of the other issues raised by Wife concerning her reasonable expenses, the maintenance award, and the property division.

### Payment of Debts Characterized as Maintenance

Wife makes several complaints about the portion of the maintenance award represented by the requirement that Husband pay her mortgage and car payments until those debts are "retired." We acknowledge some degree of vagueness and potential confusion in the use of that term. Wife also argues that these portions of the maintenance award are limited in duration and those limitations are not supported by substantial evidence.[3] Resolution of those issues is not necessary, however, because we find a more fundamental problem with the court's judgment treating the debt payments as maintenance.

In *Cates v. Cates*, 819 S.W.2d 731, 733 (Mo. banc 1991), the parties had agreed to an award of "maintenance in gross" of $7,800 payable at a rate of $325 per month. When the wife remarried, a question arose as to whether the maintenance was terminated. The Court discussed the differences between traditional alimony and maintenance as established in Chapter 452. *See Cates*, 819 S.W.2d at 734–35. The Court stated that "[m]aintenance awards under Section 452.335 serve the purpose of permitting the receiving spouse to readjust financially during a period of dependency until that spouse can achieve a reasonable measure of self-sufficiency." *Id.* at 736. The Court pointed out that maintenance is founded on need and should not extend

beyond the period of need. *Id.* at 735. From these premises, the Court held that:

> ... [I]t would make little sense for the law to countenance a lump sum or "gross" award based on need which was not subject to modification. Thus the dissolution of marriage statutes appear to contemplate a lump sum or gross payment only as a division of property.

*Id.* Maintenance in gross was therefore prohibited as a means for providing economic support under § 452.335, RSMo. *Id.* at 738.

In *Jamison v. Jamison*, 828 S.W.2d 377 (Mo.App.1992), the trial court awarded a monetary judgment in the amount of $14,471 to be satisfied by husband making the regular monthly mortgage payments due on the family residence until the debt was paid in full. *Id.* at 378. Husband appealed contending that wife was not entitled to maintenance under § 452.335, RSMo. We cited *Cates* in holding that the trial court's description of the award as maintenance in gross was inappropriate. *Id.* We affirmed the judgment as modified[4] because the trial court's purpose was clear—to divide the marital assets in an equitable manner:

> In this case, the trial court intended to allocate the debt remaining on the martial home to appellant. That allocation falls under the division of property, not maintenance.

*Id.* at 379.

In *Boettcher v. Boettcher*, 870 S.W.2d 876 (Mo.App.1993), the trial court ordered husband to pay to wife $25,000 cash in two

---

**3.** Of course, in this case there is a maintenance award of both limited and unlimited duration. Neither party had drawn to our attention any decision involving this situation in the context of the judicial preference for maintenance of unlimited duration. *Tillock v. Tillock*, 877 S.W.2d 161, 163 (Mo.App.1994).

**4.** The trial court was ordered to strike the words "maintenance in gross" from the judgment.

installments. *Id.* at 878. Husband appealed contending the order was an inappropriate award of maintenance in gross under *Cates.* We acknowledged the rule but said: "Nonetheless, lump sum payments are permissible in property division to make an equitable division." *Id.* The husband persisted, arguing that if the award was part of the property division the trial court had a duty to decrease the assets awarded to wife. We rejected the argument because the trial court had made a finding of misconduct which justified a disproportionate property award. *Id.* Other courts have found that orders for payment of debts that are not carefully characterized create an issue whether they are improper maintenance in gross or a division of property. See *Davis v. Davis,* 908 S.W.2d 163 (Mo.App.1995) (separation agreement for a spouse to continue paying second mortgage on a house awarded to other spouse was ambiguous).

■ A trial court's order for payment of marital debt should not be characterized as maintenance where it is simply an aspect of the property division. In *Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778 (Mo.App. 1998), the trial court ordered husband to pay all marital debt either directly to wife or to the creditors; the trial court also ordered the debts considered lump sum maintenance and non-dischargeable in bankruptcy. *Id.* at 782–83. Husband appealed contending wife could not prove a need for maintenance or his ability to pay. *Id.* at 786. The principal item of debt was the mortgage on a house awarded, in fact, to husband. *Id.* The trial court's intent apparently was to protect wife from liability on the mortgage if husband defaulted. We *sua sponte* directed, on remand for other reasons, that the trial court reconsider its order regarding the debt because it was an aspect of the property division and

not maintenance, citing *Cates. Id.* at 787. *Al–Yusuf* counsels us to question whether the debt payments in this matter are proper in light of *Cates* and its progeny.

## The Conundrum of the Debt Payments as Maintenance Award

■ Here, the trial court has awarded to Wife, as a component of maintenance, the debt payments described above, yet the trial court also allocated those debts to Husband in the division of marital property and debts. In our view, those debts cannot be classified as both maintenance and property division. The trial court's approach hampers us, however, in fully considering and acknowledging the trial court's exercise of discretion with regard to determining the amount of maintenance required by wife and the amount of marital property she is to receive in the property division.

If the debt payments discussed above are treated as maintenance, under the concept of need underlying § 452.335, RSMo, as expressed in *Cates,* and excluded from the property division, then the division of marital property shifts from roughly equal (50.70 percent to Husband) to 59 percent in favor of Husband.[5] We do not suggest that such a division is necessarily improper, but without knowing the court's intent with regard to these debts we cannot properly evaluate and apply the statutory factors within § 452.330, RSMo. We would also need to consider the vagueness arguments raised by Wife and discussed earlier.

Conversely, if the trial court really intended to make an award within the property division of the housing and auto debts, this calls into question whether those debts are properly considered in determining Wife's reasonable needs for purposes

---

**5.** If Wife assumed the debts on her house and     car.

of calculating maintenance. We cannot determine, for example, if the trial court's determination of $2,851 as Wife's monthly reasonable needs includes housing and auto expenses or if that is a determination of her reasonable needs excluding those expenses because they are eliminated by the property division.[6] Although it might be possible by one interpretation of the judgment to answer that question by finding the issue consistent with the judgment, our application of that standard of review is thwarted by the court's erroneous application of the law in treating debt payments as maintenance while also treating those debts as part of the property division.

On remand, the trial court should clearly delineate whether the debt payments are indeed part of the property division. If so, they should not be characterized as maintenance. Conversely, if the trial court determines that the housing and auto debt are intended to be included within Wife's reasonable needs in determining a maintenance award, then it should conform its award to the principles announced in *Cates* and subsequent cases. The trial court should also consider contingencies for third party payment or earlier satisfaction of those debts, such as when a liened asset is sold or damaged by an insured casualty. Failure to do so may mean that the amount of equalization intended is not really accomplished. One way, although not exclusive, would be to enter a judgment in the remaining amount of the debt, to be satisfied by payment to the lien creditor or directly to the other spouse if the lien is released. Depending upon how the court treats these items it may or may not, in its discretion, need to reconsider whether the resultant effect on the property division accomplishes its intention of a fair and equitable division of property.

## Determination of Wife's Reasonable Needs

The trial court found, as required by § 452.335.1 to make an award of maintenance, that Wife lacked sufficient property to meet her reasonable needs and was unable to support herself through appropriate employment.[7] The trial court found Wife's reasonable needs to be $2,851 per month. She complains that this finding is contrary to the evidence and without foundation on the basis that her income and expense statement showed average monthly expenses totaling either $3,956 or $3,556.[8] She states that Husband had been either sending her funds or making payments of monthly expenses for her totaling $3,426 per month during the separation. She asserts that there is no issue of respondent's ability to pay that amount given past history and his effective income at trial of nearly $9,500 per month.

■ The trial court was not requested to and did not indicate how it calculated the amount of her reasonable needs. The trial court did observe in its findings that Wife was receiving two boats and two jet skis and stated that Wife needed to make her life style more modest, ruminating whether anyone "really needs to own, insure and maintain four watercraft." Wife's claimed expenses for these items was $280–360 per month. The trial court has broad discretion in evaluating the mer-

6. Adding the house and car payments to the $2851 yields a total of monthly expenses within $2 of the amount claimed by Wife.

7. The trial court found that Wife was receiving personal property in the form of securities which could reasonably yield an income of $105 per month. This finding is not contested.

8. The latter amount did not apparently include real estate taxes and personal property taxes for auto and marine equipment at the lake home.

its of each party's expense claims. *Schroeder v. Schroeder,* 924 S.W.2d 22, 26 (Mo. App.1996). The law requires "that the award be just, but does not require the court to award maintenance adequate to meet all of the needs of the spouse seeking the award even if the other spouse has sufficient resources to provide such support." *Bixler v. Bixler,* 810 S.W.2d 95, 100 (Mo.App.1991). We are ultimately unable to evaluate Wife's claim because, as discussed earlier, the trial court inconsistently has treated the debt payments as both property division and maintenance. We are therefore unsure whether the trial court intended its finding of the amount of her reasonable needs to include the car and house payment or be exclusive of those obligations. Because the trial court, on remand, will have to clarify its intent with regard to those debts, we do not reach this issue.

### Imputation of Income

■ Wife complains that the trial court erred by imputing income to her in the amount of $893 per month, as representing what she could earn at the minimum wage. A court should consider the obligation of a spouse to contribute to his or her own support. *Hartzell v. Hartzell,* 976 S.W.2d 624, 626 (Mo.App.1998). It is the duty of a spouse receiving maintenance to expend a good faith effort within a reasonable time to obtain employment. *Id.* An unemployed spouse has an affirmative duty to seek full-time employment for purposes of support after the divorce. *Bullard v. Bullard,* 929 S.W.2d 942, 944 ( Mo.App.1996). Although Wife is correct that the court need not impute income to her based upon *In re Marriage of Clarke,* 950 S.W.2d 11, 13 (Mo.App.1997), a trial court does not abuse its discretion by imputing income in the absence of evidence that she lacks employability. The evidence indicated that wife was in good

health, 47 years of age and had a high school diploma. There was no indication that she suffered any mental or emotional problems that would limit her ability to work. Although she had no particular job skills or training, the trial court apparently took this into consideration by imputing only minimum wage income to her. The court also expressed its concern about Wife's motivation to seek employment. We do not believe that the trial court abused its discretion in encouraging and requiring that Wife become at least partially self-supporting.

■ Wife also contends that the trial court's imputation of income to her for purposes of maintenance was inconsistent with its findings regarding child support that did not impute income. The Form 14 adopted by the trial court is not included in the legal file, impairing our review, but the trial court's findings of fact confirm Wife's assertion that no income was imputed to her in that Form 14. The trial court apparently rejected Husband's proposed Form 14, which suggested an imputation of income to Wife in the amount of $1,000 per month, and accepted Wife's proposed Form 14, which included no imputed income. Yet, as stated above, the trial court imputed income to Wife for the purposes of determining maintenance. There is no explanation in the record of this discontinuity. Wife favors us with no authority on this point, content to rest upon the mere existence of the inconsistency. Husband responds to this argument not at all.

We surmise that the inconsistency arises because the trial court in its original judgment, which included the Form 14 support issues, denied any maintenance to Wife (except for the debt payments described above) and did not discuss whether income should be imputed to Wife. In reconsidering its earlier denial of periodic

maintenance to Wife, the trial court imputed income to her without any apparent reconsideration of income imputation for child support purposes. We note that the post trial motions raised no issues regarding the calculation of child support, nor are any such issues raised on appeal.

A similar situation arose in *Keller v. Keller*, 18 S.W.3d 589 (Mo.App.2000), in which the trial court imputed income to the appellant for purposes of calculating maintenance, but did not impute income to the appellant in the Form 14 calculation. *Id.* at 598. While this seeming inconsistency concerned this court, the underlying question posed by that inconsistency was not addressed upon its merits. This court determined that it need not address the inconsistency because, while the parties had disputed another portion of the trial court's Form 14 calculations, neither party had taken issue with the trial court's omission of imputed income within those calculations. *Id.* Unlike the parties in *Keller*, however, the appellant in the case at bar raises the apparent inconsistency between the trial court's findings regarding the lack of imputation of income within the Form 14 and its calculation of appellant's maintenance award. Therefore it is appropriate that we address this issue.

■ Historically, in reviewing maintenance questions, the appellate courts have often looked to Form 14 calculations[9] in assessing the reasonableness of trial courts' findings with regard to maintenance. *See generally, Hosack v. Hosack*, 973 S.W.2d 863, 871 (Mo.App.1998) (appellate court used imputed income from Form 14 in recalculating whether denial of main-

tenance was appropriate); *Schroeder v. Schroeder*, 924 S.W.2d 22, 27 (Mo.App. 1996) (failure to challenge imputation of income in Form 14 waives claim of error for imputing income for purposes of determining maintenance). This suggests that the two calculations should reflect similar factual determinations with regard to imputed income, absent some evidentiary or legal basis for treating the two calculations differently. We are provided no persuasive reason why the court can reach different conclusions regarding income imputation in its maintenance and child support calculations. Nor is this court aware of any authority that would provide us with any basis for factual or legal reconciliation of this inconsistency. Mutually inconsistent factual findings cannot support the judgment. *See Basso v. Manlin*, 865 S.W.2d 431, 433–34 (Mo.App.1993). We must therefore reverse to permit the trial court to reconsider its inconsistent findings concerning imputation of income to Wife.

### The Property Division

Turning next to the issue of the trial court's division of property, Wife essentially argues that the trial court did not give sufficient weight to the award of non-marital property in making its division of the parties' marital property. Wife, while not disputing the trial court's classification of non-marital property, asks this court to find that she should have been allocated a greater share of the marital property to counterbalance the substantial amount of non-marital property awarded to the Husband. She stresses that the non-marital property set off to Husband more than exceeds the total marital property award-

---

**9.** It should also be noted that an award of maintenance to a party should be included as income to that party and entered into the Form 14 calculation. *See Thill v. Thill*, 26 S.W.3d 199, 206 (Mo.App.2000). It is unclear (but doubtful) whether appellant's mainte-

nance was included into the Form 14 calculation, given the absence of the Form 14 from the record on appeal. As neither party has attacked the Form 14 adopted by the court, we need not address this issue.

ed to her in the property division. Husband, in turn, argues that the division of marital property was appropriate, in light of the statutory factors outlined in § 452.330 RSMo, as Wife received nearly 50 percent of the marital property, factoring in the debts and other liabilities allocated to the Husband.

Section 452.330, RSMo, articulates five factors to be considered in dividing marital property. While these factors are not exclusive, the factors set forth in the statute are: (1) the economic circumstances of the parties at the time of the property division, (2) the contribution of each spouse in the acquisition of marital property, (3) the value of each spouse's non-marital property, (4) each party's conduct during the marriage, and (5) the arrangements made for custody of minor children.

Wife makes two main arguments regarding the division of marital property. First, she argues that the sheer amount of non-marital property set off to Husband should have entitled her to a greater share of the marital property. Courts have often wrestled with how much weight to accord to a substantial award of non-marital property in making an equitable division of marital property. While there have been many approaches suggested in how to evaluate this factor, no reported case attempts to articulate a mathematical formula to apply in such circumstances. *See Smith v. Smith*, 702 S.W.2d 505, 509 (Mo.App.1985). Some of those approaches have considered the economic contribution of each party or the value of the non-marital property in comparison to the parties' economic situations. *Id.*

Wife's second argument is that the trial court improperly considered her alleged marital misconduct within the property division. A party's misconduct during marriage is an appropriate factor in the division of marital property. Section 452.330.1(4), RSMo. However, before it is proper to consider misconduct in dividing marital property, it is necessary that the misconduct place additional burdens upon the non-offending party. *See McNair v. McNair*, 987 S.W.2d 4, 6 (Mo.App.1998). Here, the record is devoid of evidence that respondent was faced with any additional marital burdens as a result of the appellant's extramarital affair.

We do not reach these issues, however, as the ultimate disposition of the marital debts upon remand may require the trial court to revisit the division of marital property. If so, then the trial court will naturally need to review that division guided by the statutory factors outlined in § 452.330, RSMo.

## Attorneys Fees

As with the other issues discussed above, the trial court is granted broad discretion in determining whether an award of attorney fees is appropriate and determining the amount of that award. *McNair v. McNair*, 987 S.W.2d 4, 8 (Mo. App.1998). The trial court's decision shall not be disturbed unless that decision constitutes an abuse of discretion. *Id.* In considering an award of attorney fees, the court must consider "all relevant factors including the financial resources of the parties." Section 452.355, RSMo. The trial court is also permitted to consider the misconduct of a party during the marriage. *McNair*, 987 S.W.2d at 8. Here, while the trial court awarded only $1,000 to appellant as partial compensation for her attorney fees, the trial court's decision in this regard would not appear to be an abuse of discretion. Accordingly, Wife's final point is denied.

The judgment is affirmed as to the issue of attorney fees and in all other respects is

reversed and remanded for further proceedings consistent with this opinion.

ROBERT G. ULRICH, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.