**Thomas GAMBREL,**
**Petitioner/Appellant/Cross–Respondent,**

v.

**Rosemary GAMBREL,**
**Respondent/Respondent/Cross–Appellant.**

Nos. 69832, 69889.

Missouri Court of Appeals,
Eastern District,
Division One.

April 8, 1997.

Corinne R. Coston, Mary Ann Weems, Law Offices of Mary Ann Weems, Clayton, for petitioner/appellant/cross–respondent.

Carl F. Kohnen, Florissant, for respondent/respondent/cross–appellant.

REINHARD, Judge.

Husband appeals and wife cross-appeals from the judgment dissolving the marriage of husband and wife. We affirm as modified.

Husband and wife married on April 4, 1985, in Bell County, Kentucky. In October

1985, husband moved to St. Louis, Missouri, where he had been called to work by the Ford assembly plant after being laid off. Wife moved to St. Louis to live with husband in January 1986, and they subsequently purchased a home in Florissant, Missouri.

In 1989, wife injured her back while working at Dierberg's grocery store and received an $11,000 workers' compensation settlement. In 1992, wife moved to Kentucky and made a down payment on a home in Tennessee with part of her workers' compensation award. According to husband, wife also purchased a riding lawnmower, a gas grill, and furniture, and she made several improvements to the home. Husband testified that wife titled the house in the name of her daughter, Charleen, because she was unable to obtain credit after she and husband filed for bankruptcy.

Husband testified that wife receives social security disability benefits and food stamps and earns additional money by working in a restaurant and cleaning houses. Husband admitted that wife's extra income was not reported on their joint tax returns. Husband earns a gross income of $1,119.83 per week at Ford when he works overtime. In 1994, husband's gross income totaled $51,000, including overtime and a Christmas bonus.

Husband estimated the value of the Florissant home to be $60,000, and the mortgage balance to be $68,000. Husband owns a 1995 Mercury Cougar worth $15,000, but he owes $16,000 or $17,000 on the car. Wife drives a 1987 Mercury Cougar that husband valued at $3,000.

Husband asserted that during his marriage to wife, he paid all property taxes on her Tennessee home, taxes on her social security benefits, mortgage payments on the Florissant house, and payments relating to their bankruptcy, including an $11,000 credit card debt.

Wife testified that after her injury at Dierberg's, she had a disk removed and underwent spinal fusion. She was hospitalized in 1992 for back problems and was placed in a

body cast for six months. In 1992, she moved to Tennessee to recover from her back problems because husband was not properly caring for her in St. Louis. Husband's insurance continues to pay for her medical care.

According to wife, her injuries have rendered her unable to work. Because her monthly benefits do not adequately provide for her basic needs, wife has borrowed $9,000 from Charleen, and Charleen has taken over the payments on the Tennessee house. Wife denied working at a restaurant or cleaning houses since moving from St. Louis.

Bonnie Willis, wife's neighbor in Tennessee, testified that wife has not been employed since she moved to Tennessee.

In rebuttal, husband called his first cousin, James Haynes, who testified that he had recently seen wife working at a restaurant and had purchased sandwiches from her. Husband also called his brother, James Gambrel, who recalled that wife told him she used her daughter's social security number while working at the restaurant. James Gambrel also stated that wife told him she cleaned five houses per week and charged $25 per house.

On appeal, husband asserts the trial court erred in dividing forty-one percent of his pension as marital property.

██ The trial court has wide discretion in dividing marital property. *Johnson v. Johnson*, 894 S.W.2d 245, 248 (Mo.App. E.D. 1995). However, retirement benefits accumulated prior to the marriage are not marital property and are not divisible. *Baker v. Baker*, 804 S.W.2d 763, 764–65 (Mo.App. 1990).

██ Husband testified that he had accumulated twenty-seven years in his pension program—"ten [years] since the marriage" [1] and seventeen before the marriage. Based on the evidence before the trial court, only thirty-seven percent of husband's pension benefits accumulated at the time of dissolution were marital property. Accordingly, we modify the judgment of the trial court and

---

1. Husband testified that he was called back to work on October 26, 1985. Dissolution occurred on November 21, 1995. Thus, approximately ten years and four weeks elapsed between his call-back and dissolution.

award wife one-half of thirty-seven percent of husband's pension benefits accumulated at the time of dissolution.

Husband also contends the trial court's award of $300 in monthly maintenance to wife was excessive. In her sole point on cross-appeal, wife also challenges the maintenance award and alleges it is insufficient to enable her to meet her reasonable needs.

■ Trial courts are vested with considerable discretion in ordering maintenance. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 953 (Mo.App. E.D.1993). We review an award of maintenance only for an abuse of discretion. *Id.*

Section 452.335.1, RSMo 1994, states that a maintenance order is proper when the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.2, RSMo 1994, provides that the court shall consider all "relevant factors" in determining the amount of maintenance, including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the marital property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

■ Husband and wife testified extensively about their monthly income and expenses. The trial court found that, without maintenance, wife's monthly expenses exceeded her monthly income by $283. The trial court also determined that husband was financially able to pay $300 each month for wife's maintenance. After reviewing the record, we conclude the trial court did not abuse its discretion in ordering husband to pay $300 each month in maintenance to wife.

Husband further asserts the trial court abused its discretion in ordering him to pay $1,080 for wife's attorney's fees. After considering the resources of both parties, we find no abuse of discretion. *Vehlewald,* 853 S.W.2d at 950–51.

Judgment affirmed as modified.

DOWD, P.J., and GARY M. GAERTNER, J., concur.