In re MARRIAGE OF James S. NOVAK and Mary Helen Novak Mary Helen Novak, Petitioner/Respondent,

v.

James S. Novak, Respondent/Appellant.

Nos. ED 79724, ED 79839.

Missouri Court of Appeals, Eastern District, Division One.

June 18, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 5, 2002.

Application for Transfer Denied Sept. 24, 2002.

Cynthia S. Holmes, St. Louis, MO, for respondent.

Jeffery T. McPherson, Thomas B. Weaver, Armstrong Teasdale LLP, Justin C. Cordonnier, Green, Cordonnier & House, St. Louis, MO, for appellant.

Before WILLIAM H. CRANDALL, JR., P.J., KATHIANNE KNAUP CRANE, J. and ROBERT G. DOWD, JR., J.

PER CURIAM.

Husband appeals from a decree of dissolution of marriage. He challenges the award of maintenance, the award of child support, the division of marital property, and the allocation of debt. We affirm.

The facts, viewed in the light most favorable to the verdict, are as follows. James S. Novak [husband] and Mary Helen Novak [wife] were married on June 20, 1981. Two children were born of the marriage. The parties separated in July, 2000 and wife filed a petition for dissolution. The case was tried on May 9 and 10, 2001. At the time of trial, wife was fifty-two years old, husband was sixty years old,

and the children were eighteen and fifteen years old.

Prior to the marriage, wife, who had graduated from high school and attended one year of college, was employed by Graybar Electric Company. After the marriage, wife continued her employment at Graybar until their son was born in 1982. Between 1983 and 1987 wife worked short-term, temporary assignments at Graybar. At the time of trial, wife was employed by the Rockwood School District, as a food service employee, and by H & R Block, as an individual income tax preparer, both of which were part-time jobs. In 2000 her annual gross income from Rockwood was $6,369, and her annual gross income from H & R Block was $5,770. In addition to her two part-time jobs, wife had started taking college courses to get a degree in health information management. She anticipated that the degree will allow her to make between $28,000 and $35,000 annually.

At the time of trial, husband was, and had been, employed by Graybar Electric for forty-one and a half years. In 2000, husband received a promotion to manager. Husband's base salary was $6,637 per month in 2000. He also receives an annual bonus which has increased every year since at least 1997. In 2001 he received a bonus of $34,148 for the year 2000. In addition, he receives an annual stock dividend which was $6,764 in 2000.

Husband had a pension plan and a profit sharing plan at Graybar. His participation in the pension plan began in November, 1959 and in the profit sharing plan in January, 1960. Husband's monthly accrued retirement benefit, would be $2,382.84 when he retired in 2006. Wife's expert calculated that one-half of the marital portion of husband's monthly pension payment would be $1,071.28. Although husband's expert used a different number

for the marital portion of the pension, his calculations showed that, if the pension plan converted wife's marital portion to a monthly benefit to be payable immediately and over wife's lifetime, the monthly benefit would be less than if paid over husband's lifetime, or if deferred until husband's retirement, or both.

At the time of trial, husband's profit sharing plan had a value of $444,593.63. Wife's expert calculated the marital portion of the profit sharing plan to be $418,014.63. Both experts calculated lifetime income from possible awards of shares of the profit sharing plan to the parties based on the present value of the awards and interest. The record on appeal does not indicate that anyone calculated the monthly income available to wife if she was awarded $164,007.32, which she in fact was awarded. However, wife's expert calculated that, if husband's share was $164,007.32, his quarterly income would be $4,618 for 14 years, which was husband's life expectancy. The monthly income calculations assumed the total depletion of principal over the term of the payout.

At trial the parties agreed that, if the pension and profit sharing plans were split between the parties, both parties could draw on the profit sharing plan without a penalty. In addition, wife could draw on the pension plan immediately without a penalty, but husband could not draw on the pension plan until he retired. Wife's attorney requested that wife not be compelled to draw on the pension plan until she was ready to retire, at age 65 or thereafter.

In its decree of dissolution, the trial court awarded wife maintenance of $1,700 per month and ordered husband to pay $82.24 per month as one-half of her health insurance cost. It also awarded wife $1,057 per month in child support and divided the marital property set out on

"Exhibit A" in approximately equal shares. Wife was awarded $357,543.63 in marital property, which consisted of two cars, $139,078.45 equity in the marital home, $1,071.23 of husband's accrued monthly benefit in his pension plan ("subject to further actuarial reduction in accordance with Plan provisions"), $164,007.32 of husband's pension and profit sharing plan, and miscellaneous minor assets. The trial court allocated $29,955.00 of the marital debt to husband and $4,221.00 to wife based on its finding that husband's "far greater income and separate assets" give him the ability to pay a larger share of marital debt. It set apart $367,167.62 in separate property to husband. It also set aside to wife her separate property, which was a $47.15 monthly retirement benefit to begin at age 60.

## Discussion

We affirm a dissolution decree if it is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares or applies the law. *In re Marriage of Clark*, 801 S.W.2d 496, 498 (Mo.App.1990). We view the evidence and all permissible inferences therefrom in the light most favorable to the court's decree, and disregard all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We defer to the trial court's determination of the credibility of witnesses. *Rapp v. Rapp*, 789 S.W.2d 148, 150 (Mo.App.1990).

For his first point, husband asserts that the trial court abused its discretion in ordering him to pay wife maintenance. He argues that the trial court failed to 1) consider that wife had access to husband's pension and profit sharing plans which would meet her reasonable needs, 2) impute income from full-time employment, and 3) find that wife was capable of earning between $28,000 to $35,000 a year.

We review an award of maintenance only for an abuse of discretion. *Clark*, 801 S.W.2d at 499. To justify a change in the amount on appeal, the amount of maintenance awarded must be unwarranted and wholly beyond the means of the spouse to pay. *Id.* The party challenging the award has the burden to demonstrate that the amount is so excessive as to constitute an abuse of the trial court's discretion. *Id.*

The trial court may grant maintenance to either spouse, but only if it finds that the spouse seeking maintenance:

1) lacks sufficient property, including marital property, apportioned to him, to provide for his reasonable needs; and

2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.1 RSMo (1994).

The trial court found that wife lacked sufficient property to provide for her reasonable needs and was unable to support herself. It found that, although wife was capable of earning $20,000 per year, it was unnecessary for her to obtain full-time employment because she was pursuing additional education to enhance her future earning capacity, which would reduce husband's burden of support in the future.

### a. Pension and Profit Sharing Plans

Husband first argues that the court erred in its maintenance award because it failed to consider wife's share of husband's pension and profit sharing plans, which amounts would meet her reasonable needs. Husband relies on *Hill v. Hill*, 53 S.W.3d 114 (Mo. banc 2001) for the proposition that it is reversible error for the trial court

not to consider the immediately available funds from retirement accounts in determining an award of maintenance. Husband asserts that, because the pension and profit sharing plans were immediately available to wife, it was reversible error under *Hill* for the trial court to award her maintenance. Husband misreads *Hill.*

■ In *Hill* the Supreme Court reversed a maintenance award to a fifty-eight and one-half year old wife which did not attribute any income from IRA and retirement funds to wife in calculating her need for maintenance. Wife had been awarded $500,000 in these funds, *after* payment of taxes and penalties. The court held this was marital property apportioned to a spouse which must be considered in deciding the sufficiency of a spouse's property to provide for reasonable need. *Id.* at 116. Income from retirement accounts (subject to penalties and taxes) must be considered in calculating benefits. *Id.* (overruling *Witt v. Witt,* 930 S.W.2d 500 (Mo.App.1996)).

■ However, the court also held that trial courts are not required to impute income retirement and IRA accounts in every case, overruling *Shook v. Shook,* 997 S.W.2d 103, 107–08 (Mo.App.1999). *Hill,* 53 S.W.3d at 116. This is because a spouse is not required to consume his or her apportioned share of marital property before receiving maintenance. *Id.* Such consumption could occur by reason of the penalties and taxes due on early withdrawal. *Id.*

Accordingly, the court struck a balance and set out the following guidelines for the consideration of retirement and IRA accounts:

> In sum, when calculating maintenance, a trial court must consider the income from retirement and IRA accounts to be apportioned as marital property. The trial court determines the amount of income—if any—imputed from these accounts based on the facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties.

*Hill,* 53 S.W.3d at 116. *Hill* further states that this "is but an application of the concept that trial courts have broad discretion in determining the amount of maintenance and appellate courts will not interfere, absent an abuse of discretion." *Id.*

Here, the trial court did not abuse its discretion. Although the trial court's judgment preceded the *Hill* opinion, the trial court's findings were consistent with *Hill.* The court awarded wife $164,007.32 from the profit sharing plan and a monthly benefit (subject to actuarial reduction) from the pension. The court found that wife could begin receiving lifetime payments of income from her share of the profit sharing and pension plans as soon as the Qualified Domestic Relations Order was approved. The court specifically stated that payments which wife may receive immediately from the pension and profit sharing plans are assets "which can be and have been considered in determining the maintenance," and again specifically stated: "Payments [wife] may receive immediately from the Graybar Pension Plan have been considered in the award of maintenance." It found that, although wife could start receiving payments from the pension and profit sharing plans, it was not appropriate to reduce maintenance payments "dollar for dollar for amounts [wife] could receive by starting payments immediately." It specifically found that wife was not "required to use principal from her portion of the Graybar Profit Sharing Plan for her

current support rather than waiting and allowing it to grow into her retirement income." It likewise held that, although husband, like wife, would have the ability to use principal and interest from the Graybar Profit Sharing Plan for his support or for child support, he was not required to do so.

Husband argues that wife was entitled to $1,071 per month in pension funds and $1,539.37 per month in the profit sharing plan. This argument is based on a misreading of the evidence. The evidence was that husband's marital share of his monthly pension benefit, when he retired in 2006, would be $1,071.28 per month. However, if wife drew the benefit immediately and over a longer expected life span, her benefit would be substantially decreased. Likewise, the evidence showed that, if husband was awarded $164,007.32 of the profit sharing plan, and it was converted to an immediate quarterly benefit, his quarterly income would be $4,618 (or $1,539.37 per month) based on his life expectancy of 14 years. Wife was eight years younger and would have a longer life expectancy so the award of the same amount to her would convert into a much lower monthly income. In addition, these income figures are based on a payout of both principal and interest.

In its decree, the trial court rejected a requirement that either party be charged with all the income that could be received by having these plans converted to an immediate monthly benefit. This decision complies with *Hill.* The trial court considered the availability of the funds but was not required to impute all or a portion of income from them. In this case the trial court did not abuse its discretion in not imputing all of the income husband argues should be imputed. First, the amounts husband wanted attributed as "income," even if reduced for wife's life expectancy and an immediate payout, was not simple

interest or investment income on a lump sum, but included a payout of principal. To require wife to use principal for income would contravene the well-settled law in Missouri that a spouse is not required to consume his or her apportioned share of marital property before receiving maintenance. *Hill,* 53 S.W.3d at 116; *Leslie v. Leslie,* 827 S.W.2d 180, 183 (Mo. banc 1992).

Next, the court could properly consider wife's age, 52, which, if she started payments immediately, rather than at her retirement, would result in significantly smaller payments over her lifetime, including after retirement, than if she deferred drawing payments until her own retirement. The court could also consider that, except for her $47.15 retirement benefit, these were the only funds available for wife's retirement and that, after she completed her degree, she would not have time to build up comparable retirement funds. This is not an award of maintenance to cover payments to a retirement fund as in *Brooks v. Brooks,* 957 S.W.2d 783, 790–93 (Mo.App.1997), on which husband relies. Rather, the decree simply allows both parties to maintain funds in established retirement accounts for their use as retirement income and does not require that these funds and their earnings be depleted to furnish present support.

Further, although the court did not reduce "dollar for dollar" the amount of maintenance by the amount of income wife could receive from the plans, it did not award her the full amount of maintenance to meet her expenses. Wife asked the court for monthly maintenance in the amount of $2,500, and child support in the amount of $1,289.14. This was based on expenses for herself and the children of $4,336. The court awarded her a total of $2,839 in maintenance, insurance, and child support. This amount, combined with her

$1,000.00 employment income, was $1,300 less than her expenses.

Accordingly, we find that the trial court specifically considered payments wife could receive from the funds and that under the circumstances the court acted in its discretion in not requiring her to start an immediate and maximum payout of both funds.

The trial court did not abuse its discretion in awarding maintenance to wife.

b. *Duty to Seek Full–Time Employment*

Husband next argues that the trial court erred in its award and computation of maintenance because it should have required wife to seek full-time employment. We disagree.

■ The trial court is permitted to consider the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment. Section 452.335.2(2). Section 452.335 clearly indicates that a spouse seeking maintenance is, in proper cases, to be encouraged and aided in becoming self-sufficient by education or training. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983). In this case, the court found that, if wife worked full-time, given her education and experience, she could not earn more than $20,000 per year, which would not significantly improve her ability to meet her reasonable needs. By returning to school, wife is making constructive efforts to enhance her income potential. *Price v. Price*, 921 S.W.2d 668, 672 (Mo.App.1996). These efforts should be encouraged by providing temporary maintenance. *Id.* The trial court's refusal to require wife to seek full-time employment, but rather to allow her to work part-time and complete her education, is within its discretion.

c. *Imputation of Income from Full Time Employment*

■ Husband finally argues under this point that the trial court's determination that wife was only capable of earning $20,000 per year was unsupported by the evidence because she was capable of earning between $28,000 and $35,000 if she chose to work full-time. Husband's claim is refuted by the record and the trial court's determination of credibility.

Wife testified that her job at H & R Block is seasonal and cannot become a full-time job. Although husband called as a witness a certified public accountant who testified that wife could make $28,000 working at an accounting firm, on cross-examination wife's attorney demonstrated that this opinion was based on inaccurate and inflated information about wife's experience and skills. The witness admitted that, except for an experienced office manager, no non-professional at his office was making over $25,000 and those persons had substantially more work experience than had wife. Husband testified that he told wife that Graybar would hire her at a salary between $30,000 and $35,000 per year. However, this was more than his expert opined wife could make. Under all the evidence, the trial court acted within its discretion when it discredited the testimony that wife could earn $28,000 or more and stated that it believed wife's testimony about her educational background and work experience. Point one is denied.

We have considered the other points raised by husband. The trial court's judgment is supported by substantial evidence and is not against the weight of the evidence. No error of law appears. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An opinion reciting the detailed facts and restating the principles of law would have no precedential value. The

remainder of the judgment is affirmed pursuant to Rule 84.16(b).

The judgment is affirmed.