**Evelyn HALL, Respondent,**

v.

**Jimmy HALL, Appellant.**

**No. WD 61615.**

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Marilyn M. Shapiro, Kansas City, MO, for Appellant.

Sheldon Bernstein, Kansas City, MO, for Respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and PATRICIA BRECKENRIDGE, Judge.

JOSEPH M. ELLIS, Chief Judge.

Jimmy Hall ("Husband") appeals from a judgment entered in the Circuit Court of Jackson County dissolving his marriage to Evelyn Hall ("Wife"). Husband challenges the Court's award of $300.00 per month in maintenance to Wife, its equal division of Husband's pension, and its award of $2,000.00 in attorney's fees to Wife. For the following reasons, we affirm the trial court's judgment.

Husband and Wife were married on September 3, 1988. At that time, Husband was employed at Sprint, and Wife was unemployed and receiving disability benefits.

On August 3, 2001, Wife filed a Petition for Legal Separation, requesting a decree of legal separation, maintenance, an equitable division of the couples' property and debts, and attorney's fees. On January 10, 2002, Husband answered Wife's petition and cross-petitioned for dissolution of the marriage. Wife's petition was later amended to request a decree of dissolution.

On April 4, 2002, the couples' petitions were heard by a Commissioner in the Family Court Division of the Circuit Court of Jackson County. At that time, Wife was sixty years old, and Husband was fifty-eight years old. After reviewing the evidence, on May 14, 2002, the Commissioner entered his Findings and Recommendations for Judgment for Dissolution of Marriage. On May 24, 2002, the Circuit Court entered its Judgment and Order adopting the Commissioner's findings and recommendations as the judgment of the court. In relevant part, the judgment ordered Husband to pay $300.00 per month in modifiable maintenance to wife,[1] divided Husband's pension from Sprint equally between the parties, and awarded Wife $2,000.00 in attorney's fees. Husband brings three points on appeal.

This Court must affirm a dissolution decree unless it is not supported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Novak,* 83 S.W.3d 597, 600 (Mo.App. E.D.2002). We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all evidence and inferences to the contrary. *Id.*

In his first point, Husband argues that the trial court abused its discretion in ordering him to pay Wife $300.00 per month in modifiable maintenance. Husband contends that such an order is not supported by the evidence. More specifically, Husband claims that the trial court failed to adequately balance his ability to pay maintenance with his ability to meet his own reasonable needs.

Under § 452.335.1,[2] "[a] court may grant maintenance if it finds the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment." *Pruitt v. Pruitt,* 94 S.W.3d 429, 435 (Mo.App. E.D.2003). Once "the threshold test for eligibility has been met under § 452.335.1, the court then considers the nonexclusive list of factors set forth in § 452.335.2, and all relevant factors, in making the final resolution of the appropriateness of maintenance, the amount, and the duration of any award of maintenance." [3] *McIntosh v.*

---

1. The trial court also denied Husband's request for maintenance.

2. All statutory references are to RSMo 2000 unless otherwise noted.

3. Section 452.335.2 sets forth the following factors to be considered when awarding maintenance:
 (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
 (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
 (3) The comparative earning capacity of each spouse;
 (4) The standard of living established during the marriage;

*McIntosh,* 41 S.W.3d 60, 68 (Mo.App. W.D. 2001) (emphasis omitted). "We will not interfere with the trial court's award of maintenance unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the spouse ordered to pay." *Pruitt,* 94 S.W.3d at 435.

The evidence presented at trial reflected that Wife had been receiving social security disability payments since 1980 and that this was her only source of income. At the time of trial, she was receiving $799.00 per month in disability benefits. Wife testified that she had been found to be permanently and totally disabled and was not capable of working. Wife also presented evidence that her reasonable needs exceeded $1,500.00 per month. Based upon the evidence presented at trial, the trial court found that Wife was unable to support herself through appropriate employment and that she lacked sufficient property, including the marital property apportioned to her in the judgment, to provide for her reasonable needs.

Husband does not challenge the trial court's findings that the threshold requirements of § 452.335.1 were satisfied. Instead, Husband argues that the trial court failed to adequately consider Husband's financial situation in entering its award of maintenance and that he lacks sufficient resources to pay such an award and still meet his own reasonable needs.

■ "[T]rial courts have broad discretion in determining the amount of maintenance and appellate courts do not interfere, absent an abuse of discretion." *Hill*

*v. Hill,* 53 S.W.3d 114, 116 (Mo. banc 2001). "Judicial discretion is abused when the trial court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration." *Pruitt,* 94 S.W.3d at 435. "The party challenging the award has the burden to demonstrate that the amount is so excessive as to constitute an abuse of the trial court's discretion." *Novak,* 83 S.W.3d at 600.

■ When determining whether to award maintenance and the amount to be awarded, the trial court is required to balance the reasonable needs of the spouse seeking maintenance against the other spouse's ability to pay. *Colquitt v. Muhammad,* 86 S.W.3d 144, 150 (Mo.App. E.D.2002). " 'An award of maintenance should not exceed the paying spouse's capacity to provide.' " *In re Marriage of Pahlow,* 39 S.W.3d 87, 97 (Mo.App. S.D. 2001) (quoting *Griffin v. Griffin,* 986 S.W.2d 534, 538 (Mo.App. W.D.1999)).

Husband claims that his testimony at trial established that his sole sources of income were his monthly pension checks for $475.14 and the $200.00 per month he received from being a pastor at a church. Husband further contends that his testimony that he wanted to quit his duties at the church to move to Georgia to take care of his mother established that that source of income would end. Husband stated that he had not sought further employment since retiring from Sprint and that

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs

while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.

The trial court expressly stated that it had considered all of the factors set forth in § 452.335 in determining that its award of maintenance was appropriate.

he has no current employment prospects. Husband also relies upon his testimony that he has some pain in his shoulders and poor eyesight to assert that he is in poor health. Based upon this testimony, Husband contends that the record clearly established that he did not earn enough to pay any maintenance to Wife and still meet his own reasonable needs.

In making his argument, Husband wholly disregards the applicable standard of review and views the evidence in the light most favorable to himself. As noted, *supra*, on appeal from a dissolution decree, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Id.*

"As [the] trier of fact, it is the function of the trial court to decide the weight and value to be given to the testimony of any witness." *Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App. W.D.1994). "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness, even if uncontradicted." *In re Marriage of Cranor,* 78 S.W.3d 150, 157 (Mo. App. S.D.2002). Accordingly, the trial court was not required to give any weight to any of the evidence relied upon by Husband in his argument on appeal.

▆▆▆▆ Properly viewed in accordance with our standard of review, the record certainly contained sufficient evidence from which the trial court could reasonably have determined that Husband had the ability to pay maintenance. In considering a party's capacity to pay maintenance, " 'the court may impute income to a spouse according to what he or she could earn by use of his or her best efforts to gain

employment suitable to his or her capabilities.' " *Kunkel v. Kunkel,* 84 S.W.3d 557, 561 (Mo.App. S.D.2002) (quoting *Schroeder v. Schroeder,* 924 S.W.2d 22, 27 (Mo.App. E.D.1996)); *Pahlow,* 39 S.W.3d at 96 (quoting *Nelson v. Nelson,* 14 S.W.3d 645, 650 (Mo.App. E.D.2000)). "A party's past, present, and future earning capacity can be considered as competent evidence of a party's ability to pay maintenance." *Nelson,* 14 S.W.3d at 650.

In its judgment, the trial court expressly found that Husband had voluntarily retired from his $38,000.00 per year position at Sprint and that he was capable of continuing to be gainfully employed. The record clearly supports those findings.

Evidence was presented that Husband was still employed by Sprint, earning $38,000.00 per year, when Wife filed her petition. Subsequently, while the case was pending, Husband voluntarily took an early retirement from that job. Wife testified that Husband was in good physical condition and that she was not aware of any reason that he could not continue to work. Wife testified that Husband had been selling cars to make money and that he could continue to do so into the foreseeable future. Even Husband testified that, while he was not sure what he was going to do, he thought he could at least get a job at Walmart to pay his expenses. The trial court's finding that Husband was capable of continued employment was clearly supported by the evidence.

▆▆▆▆ While the judgment indicates that the trial court was imputing income to Husband, the court did not expressly state in the judgment how much income it imputed to Husband.[4] "When no express finding of fact is made on an issue, we

---

4. The trial court's finding related to this issue simply states, "Respondent took voluntary retirement from a position with Sprint/North Supply where he earned gross income of $38,000 per year and he is capable of continuing to be gainfully employed."

consider the issue to have been resolved in accordance with the result." *In re Marriage of Holden,* 81 S.W.3d 217, 226–27 (Mo.App. S.D.2002). " 'The judgment of the trial court must be affirmed under any reasonable theory supported by the evidence.' " *Pahlow,* 39 S.W.3d at 95 (quoting *Halupa v. Halupa,* 980 S.W.2d 325, 331 (Mo.App. E.D.1998)).

From the record, the court could reasonably have determined that Husband was capable of making up to $38,000.00 per year and imputed such income to him. The trial court was not required to give any weight to Husband's testimony that he did not think he could find a similar job, especially in light of Husband's testimony that he had not made any attempt to find another job. *See Bradley,* 880 S.W.2d at 379 ("As [the] trier of fact, it is the function of the trial court to decide the weight and value to be given to the testimony of any witness."). When this imputed income is considered together with Husband's share of the pension benefits and his income from serving as a pastor, the record clearly supports a finding that Husband was capable of paying Wife $300.00 per month in maintenance and still meeting his own reasonable needs. The trial court's maintenance award is neither patently unwarranted nor wholly beyond the means of Husband to pay. Point denied.

■ In his second point, Husband claims that the trial court abused its discretion in ordering him to pay $2,000.00 of Wife's attorney's fees.[5] Husband contends that the court failed to adequately consider his resources in making that award.

■ Under § 452.355, the trial court may make an award of attorney's fees in a dissolution action after consider-

ing all relevant factors. *Kiem v. Kiem,* 945 S.W.2d 603, 606 (Mo.App. E.D.1997). "[T]he trial court is granted broad discretion in determining whether an award of attorney fees is appropriate and determining the amount of that award." *Evans v. Evans,* 45 S.W.3d 523, 532 (Mo.App. W.D. 2001). "The trial court's decision shall not be disturbed unless that decision constitutes an abuse of discretion." *Id.* " 'To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.' " *Glenn v. Glenn,* 930 S.W.2d 519, 525 (Mo.App. W.D.1996) (quoting *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App. W.D.1992)).

■ Husband argues that the court abused its discretion by failing to adequately take into consideration his limited resources in awarding attorney's fees to Wife. Indeed, "[i]n considering an award of attorney fees, the court must consider 'all relevant factors including the financial resources of the parties.' " *Evans,* 45 S.W.3d at 532 (quoting § *452.355* ).

■ However, in making his argument, Husband relies upon the same evidence and inferences that he relied upon in his first point. Husband contends that his income is less than that of Wife and that his "income could not even reach Missouri's basis for poverty level." As in his first point, Husband wholly disregards the applicable standard of review and views the evidence in the light most favorable to himself. As noted, *supra,* the evidence in the record supported imputing income to Husband of up to $38,000.00 per year. When this imputed income is considered

---

**5.** Wife testified at trial that she had already paid $2,000.00 in attorney's fees and that she

had an outstanding balance due of $3,199.00.

along with Husband's other resources, Husband's presumed income is significantly higher than that of Wife. The trial court implicitly found that Husband had a greater ability to pay the attorney's fees than Wife did, and "[o]ne spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Stufflebean v. Stufflebean,* 941 S.W.2d 844, 847 (Mo.App. W.D.1997).

The trial court did not abuse its discretion in awarding attorney's fees to Wife. Point denied.

In his third and final point, Husband contends that the trial court erred in awarding Wife half of Husband's pension from Sprint. Husband claims that this award was not supported by the evidence and was against the weight of the evidence because the trial court did not sufficiently consider Husband's non-marital contributions to the pension prior to marriage. Husband further argues that awarding Wife half of his pension resulted in an inequitable division of property.

The trial court's determination of whether property is marital is presumed correct, and the burden is upon the appellant to demonstrate error. *In re Marriage of Nored,* 971 S.W.2d 328, 330 (Mo. App. S.D.1998). "We give deference to the trial court's decision, even if the evidence could support a contrary conclusion." *Taylor v. Taylor,* 25 S.W.3d 634, 638 (Mo. App. W.D.2000).

Husband challenges the trial court's decision to treat his entire pension as marital property. Husband asserts that, because he worked at Sprint for twenty-one years and was only married to Wife for fourteen of those years, thirty-five percent of the pension should have been set aside to him as non-marital property.

"Pension benefits are considered marital property and are subject to

division in a dissolution proceeding." *Williams v. Williams,* 17 S.W.3d 559, 562 (Mo.App. E.D.1999). "However, retirement benefits accumulated prior to marriage are not marital property and are not divisible." *Pruitt,* 94 S.W.3d at 433. Accordingly, Husband is correct that a trial court in a dissolution case should ordinarily separate the marital and non-marital portion of a pension benefit according to the source of funds rule and set aside the non-marital portion of the pension benefit to the spouse that earned it. *Taylor v. Taylor,* 12 S.W.3d 340, 345 (Mo.App. W.D. 2000).

The problem with Husband's argument is that the record does not contain sufficient evidence to establish error in the trial court's determination that the pension benefits should all be considered marital. Two cases out of the Southern District of this Court are directly on point.

In *In re Marriage of Medlock,* 749 S.W.2d 437, 439–40 (Mo.App. S.D.1988), a husband challenged the trial court's equal division of his Union Electric pension, contending that twenty-three percent of the pension should have been set aside to him as non-marital property because he had worked for Union Electric for twenty-six years and had only been married to his wife for twenty of those years. In affirming the trial court's award, the Court noted that Husband bore the burden of proving that the trial court's designation of all of the benefits as marital was erroneous. *Id.* at 440. The *Medlock* court found that, while the evidence established that Husband's employment with Union Electric antedated the marriage, Husband had not presented any evidence establishing when his pension rights began to accrue. *Id.* The *Medlock* court affirmed the trial court's treatment of the pension as marital because the record did not contain any "evidence from which the trial court could

have determined the date when [Husband] began acquiring pension rights with Union Electric." *Id.*

Similarly, in *Hubbs v. Hubbs*, 870 S.W.2d 901 (Mo.App. S.D.1994), the Southern District affirmed the trial court's treatment of Wife's pension plan as marital property, stating:

> As the trial court stated in its findings, "Contributions to pension plans prior to the marriage are not subject to division." This court's review of the record on appeal reveals no evidence that wife's pension and savings benefits began the date she began her employment with the company from which they are derived. There was no evidence as to how the pension was computed, the exact date when the pension benefits accrued, nor the date when the plan began.

> \* \* \*

> Wife did not adduce evidence from which the trial court could determine the date when her pension benefits began accruing nor the date when she commenced her savings plan. The only information the trial court had was that wife accrued pension benefits and deposited funds in the savings plan during the marriage. As such, it correctly held, based on the evidence before it, that the value of the pension plan and savings plan was marital property in its entirety.

*Id.* at 906 (internal citations omitted).

*Medlock* and *Hubbs* are consistent with the burden of proof on this issue as well as our standard of review. We perceive no reason why we should not follow them. With no evidence detailing how much, if any, of Husband's pension benefit accrued prior to marriage, the trial court cannot be found to have erred in classifying the entire pension as marital. *See Medlock*, 749 S.W.2d at 440; *Hubbs*, 870 S.W.2d at 906; *See also Taylor*, 12 S.W.3d at 346.

We note that in at least two cases out of the Eastern District the date of marriage and the dates of employment were the only evidence cited in reversing the trial court's designation of a spouse's entire pension as marital property. In *Pruitt*, 94 S.W.3d at 433, the Eastern District offered the following treatment of the issue:

> Husband testified that he began his employment with Chrysler on March 26, 1973. Husband and Wife married on September 20, 1975. At the time of trial, Chrysler had employed husband for over twenty-eight years. Based on the evidence before the trial court, only that portion of husband's pension benefits which accumulated after the date of marriage until the time of dissolution were marital property. Therefore, we reverse and remand to the trial court to divide the marital portion of husband's pension benefits and award husband the portion of his pension that is his separate property.

Similarly, in *Gambrel v. Gambrel*, 943 S.W.2d 314, 315–16 (Mo.App. E.D.1997), the Eastern District stated:

> Husband testified that he had accumulated twenty-seven years in his pension program—"ten [years] since the marriage" and seventeen before the marriage. Based on the evidence before the trial court, only thirty-seven percent of husband's pension benefits accumulated at the time of dissolution were marital property. Accordingly, we modify the judgment of the trial court and award wife one-half of thirty-seven percent of husband's pension benefits accumulated at the time of dissolution.

To the extent that *Pruitt* and *Gambrel* can be read to hold that evidence of the dates of employment and marriage alone conclusively establish the proper portion of a pension to be designated as a spouse's

separate property and mandate the reversal of a contrary determination by the trial court, we decline to follow them.[6]

The trial court's determination of whether property is marital is presumed correct, and the burden is upon the appellant to demonstrate error. *Nored,* 971 S.W.2d at 330. Husband has not met that burden. The mere fact that Husband was employed by Sprint prior to marrying Wife does not conclusively establish whether or to what extent he was accruing pension benefits during that period. There was no evidence presented at trial as to how the pension was computed, the exact date when the pension benefits accrued, nor the date when the plan began. Absent such evidence, we cannot find error with the trial court's designation of the entire pension as marital property because we cannot ascertain what, if any, contributions were made to the pension plan prior to marriage. *See Medlock,* 749 S.W.2d at 440; *Hubbs,* 870 S.W.2d at 906; *See also Taylor,* 12 S.W.3d at 346. The trial court did not abuse its discretion in finding that Husband's pension benefit was entirely a marital asset.[7]

■■■■ Husband also argues that the trial court's division of marital property was unequal and that it should have awarded the entire pension to him to equalize the distribution. Husband contends that, excluding the pension benefits, Wife received $47,200.00 worth of marital property and that he received $44,759.00 worth of property. Husband goes on to claim that the value of the marital property he received should be considered to be worth consider-

ably less than $44,759.00 because he intended to use those assets to support himself.

■■■■ "The trial court is permitted great flexibility in its division of marital property." *Thill v. Thill,* 26 S.W.3d 199, 203 (Mo.App. W.D.2000). " 'Once property is classified as marital, the factors listed in § 452.330 apply in dividing the property.' " *Keller v. Keller,* 18 S.W.3d 589, 600 (Mo. App. W.D.2000) (quoting *Waisblum v. Waisblum,* 968 S.W.2d 753, 756 (Mo.App. W.D.1998)). Section 452.330.1 mandates that:

> In a proceeding for dissolution of the marriage ..., the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:
>
> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
>
> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> (3) The value of the nonmarital property set apart to each spouse;
>
> (4) The conduct of the parties during the marriage; and

---

**6.** This opinion has been approved by the court *en banc.*

**7.** Moreover, in the case at bar, the record does not reflect that Husband ever affirmatively asserted that any portion of the pension was non-marital prior to filing his post-trial motion to reconsider with the circuit court.

Husband's Statement of Marital and Non–Marital Assets and Debts, which he submitted to the trial court during the dissolution hearing, lists no non-marital property. In fact, where the form asks for a list of all nonmarital property, Husband affirmatively stated, "None."

(5) Custodial arrangements for minor children.[8]

" 'Section 452.330.1 gives the trial court great flexibility and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider.' " *Waisblum*, 968 S.W.2d at 756 (quoting *Crews v. Crews*, 949 S.W.2d 659, 664 (Mo.App. W.D. 1997)).

 "The division of marital property in a dissolution action is discretionary with the trial court and we must defer to the court's judgment unless it is an abuse of discretion." *Muenz v. Muenz*, 99 S.W.3d 4, 9 (Mo.App. E.D.2002). " 'An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration.' " *Morse v. Morse*, 80 S.W.3d 898, 904 (Mo.App. W.D.2002) (quoting *Silcox v. Silcox*, 6 S.W.3d 899, 905 (Mo. banc 1999)). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *Bohon v. Bohon*, 102 S.W.3d 107, 109 (Mo.App. W.D.2003).

 "The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case." *Ballard v. Ballard*, 77 S.W.3d 112, 116 (Mo.App. W.D.2002) (internal quotations omitted). "The division will only be disturbed when it is so 'heavily and duly weighted in favor of one party as to amount to an abuse of discretion.' " *Thill*, 26 S.W.3d at 208–09 (quoting *Allen v. Allen*, 961 S.W.2d 891, 893 (Mo.App. W.D.1998)).

According to Husband's own calculations of the value of the marital property set aside to each spouse, Wife received approximately fifty-one percent of the marital property, and Husband received approximately forty-nine percent.[9] Husband's contention that this distribution is improper rests entirely upon his assertion that he has limited income and will be spending his marital assets to support himself.

As noted, *supra*, the record supported the trial court's finding that Husband was capable of being gainfully employed and its imputation of income to him. The trial court could more than reasonably have found that Husband's economic circumstances were significantly better than those of Wife and that Husband was more able to provide for himself than Wife.

Having reviewed the record, we find no abuse of discretion in the trial court's division of the marital assets. Point denied.

The judgment is affirmed.

All concur.

---

8. In its judgment, the trial court affirmatively stated that it had considered all of the factors contained in § 452.330 in dividing the couple's marital property.

9. This division resulted in Wife receiving marital property worth $2,441.00 more than that awarded to Husband.