**Kathryn Lynn SABATINO, Respondent,**

v.

**Victor Robert SABATINO, Appellant.**

**No. WD 70441.**

Missouri Court of Appeals,
Western District.

July 13, 2010.

Ryan J. McMillin, Kansas City, MO, for appellant.

James D. Boggs, Kansas City, MO, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and MARK D. PFEIFFER, JJ.

JAMES M. SMART, JR., Judge.

Victor Sabatino appeals the trial court's judgment in favor of Kathryn Sabatino on her petition for the dissolution of their marriage. He contends that the trial court erred in allocating marital debt and in assessing maintenance. The judgment is affirmed as modified.

## Background

Victor Sabatino (Husband) and Kathryn Sabatino (Wife) were married in 1984. In August 2007, Wife filed a petition for dissolution of the marriage. She asked for maintenance, an equitable distribution of the marital property, and payment of her

attorneys' fees. Husband filed a counter-petition and also asked for an equitable distribution of property. The couple's three children were emancipated.

The evidence at trial showed that Husband had owned a snack-food business during the first sixteen years of the marriage. During that time, the couple had a substantial income and accumulated considerable assets, including a million-dollar home. Except for a few months, Wife did not work outside the home. She testified that she and Husband had agreed that she would stay at home to raise the children.

In 2000, Husband's business failed. Thereafter, despite having significant debts, Husband remained unemployed. He was still unemployed at the time of trial, eight years later. Husband tried to start other businesses but was unsuccessful in doing so. These failed business attempts resulted in even more debt, amounting to almost $2 million by the time of trial. Eventually, the couple began selling their assets as a means of income.

In May 2007, after twenty-three years of marriage, the couple separated. Wife claimed that Husband's gambling and use of pornography, as well as the financial difficulties, had put a strain on the marriage. By the time of trial, neither Husband nor Wife was employed. The marital home had been lost to foreclosure, and both parties appeared to be living primarily off the charity of family and friends. The parties' respective statements of assets and debts confirmed that they had minimal assets and considerable debt. Wife's income and expense statement showed no income and $4,500 in monthly expenses. Husband reported no income and $4,000 in monthly expenses.

Wife testified that Husband had provided no support during the separation. She had been unable to find employment and was relying on her children and fellow church members for support. Her net worth consisted primarily of the clothes in her closet, she said. Wife requested maintenance of $1,500 per month and claimed that Husband was able to pay it. She introduced copies of Husband's bank statements from January 2007 through April 2008, which showed almost $43,000 in deposits. Wife testified that Husband never wanted to work for anyone else and, so, never tried to find a job doing so. She said she had supported Husband's attempts to open his own business and acknowledged that she had signed loans for those businesses. Wife stated that Husband had offered to be responsible for all of the couple's debt.

Husband, who previously had earned as much as $220,000 a year, testified that he had been unemployed since the demise of his snack-food business in 2000. He had been unsuccessful in finding employment in his field, he said, because those opportunities were limited. Husband also discussed various business ventures he had attempted. Since the foreclosure of the couple's home, Husband had been living with a friend. He explained that the deposits to his bank account came, in part, from the sale of an $8,000 piano. Husband also said he had allowed his friend, who was unable to open a bank account in his own name, to use his bank account for deposits and withdrawals.

The court dissolved the marriage. The court awarded Wife personal property valued at about $5,000 and awarded Husband personal property worth $22,950. The court ordered Husband to be responsible for all the marital debt of $1,735,000; for $290,000 in debts related to his new business ventures; and for all debts to his friends and family. The court found that Wife lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate em-

ployment. The court found that Husband was currently unemployed but was capable of earning at least $40,000 per year. The court ordered him to pay Wife $1,500 per month in periodic, modifiable maintenance. The court also ordered that Wife be awarded a judgment of non-modifiable maintenance for the total amount of the debt on which both were liable, $1,735,000. The court ordered Husband to pay Wife's legal fees of $6,000.

Husband appeals.

### Standard of Review

We will affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or misapplies the law. *In re Marriage of Taylor*, 244 S.W.3d 804, 808 (Mo.App. 2008). "The party challenging the dissolution decree has the burden of demonstrating error." *Id.* We review the evidence in the light most favorable to the trial court's judgment. *Id.* "A trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Id.* "We review the trial court's division of property, grant of maintenance, and award of attorney's fees for an abuse of discretion; thus, we will not disturb the trial court's decision unless it has abused that discretion." *Schuh v. Schuh*, 271 S.W.3d 35, 37 (Mo.App.2008).

### Allocation of Marital Debt

Husband claims that the trial court's judgment ordering him to pay all the marital debts is against the weight of the evidence and a misapplication of the law.

The division of marital property is governed by section 452.330.1, RSMo.[1] "[M]arital debts are to be considered when establishing a fair distribution of the marital property." *Jamison v. Jamison*, 828 S.W.2d 377, 379 (Mo.App.1992). Section 452.330.1 provides that the court "shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors[.]" The division need not be equal, but it must be fair and equitable under the circumstances of the case. *Fisher v. Fisher*, 278 S.W.3d 732, 736 (Mo.App.2009). The relevant factors here are: (1) the economic situation of each spouse when the property is divided; (2) each spouse's contribution to the acquisition of marital property, including Wife's contribution as a homemaker; (3) the value of non-marital property awarded to each spouse; and (4) the parties' conduct during the marriage. *See* section 452.330.1.[2] The trial court's division of marital property is presumed correct, and the party challenging the division has the burden of overcoming that presumption. *Holmes v. Holmes*, 878 S.W.2d 906, 912 (Mo.App.1994).

Here, the trial court found that the parties had $1,735,000 in marital debts. This included $450,000 in state and federal taxes, and the rest was apparently related to Husband's failed business. The court also found that Husband has incurred additional indebtedness of $90,000 and $200,000 related to attempted business start-ups; $10,000 in various bills; and $95,000 to friends and family. The court found that Wife had no debt. The court allocated all of the debt to Husband.

Husband contends that this allocation of debt was against the weight of the evidence. He says the evidence shows that

---

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

2. The fifth factor, "[c]ustodial arrangements for minor children," is not relevant here.

the debts were jointly incurred during the marriage, that he had been unemployed for eight years and was unemployed at the time of trial, and that the parties had minimal assets to justify such an award.

Wife says the judgment was not in error because the evidence showed that she had no financial ability to pay the debts. She also says that the debt from unpaid taxes and Husband's business liabilities contributed to the "destruction of the marital estate" and that his failure to seek employment for eight years constituted "misconduct." There was evidence from which the court could have reached that conclusion.

At the time of trial, it appeared that neither party had the financial ability to pay the debts. However, the court imputed $40,000 worth of income to Husband. Thus, the court obviously concluded that he possessed at least some ability to pay the debts, while Wife had none. The court could note the $43,000 deposited into Husband's bank account, in a period of about fifteen months. The court did not have to believe that some of those deposits belonged to another person. The value of the assets awarded to each spouse here is dwarfed by the enormous debt. Also, as noted, there was evidence that Husband had told Wife he would be responsible for all the debt. On cross-examination, Husband's counsel asked Wife:

Q. Okay. Has Mr. Sabatino—There's obviously an amount of substantial debt here, correct?

A. That's correct.

Q. Okay. And Mr. Sabatino has offered to take that debt; is that correct?

A. That's correct.

■ Husband now says making him responsible for *all* the marital debt is unfair and inequitable and violates section 452.330.1. *See Fisher*, 278 S.W.3d at 735–36. As this court has explained, however,

such a division of marital debt is "certainly within [the court's] authority." *Al–Yusuf v. Al–Yusuf*, 969 S.W.2d 778, 786 (Mo.App. 1998) (trial court had authority to allocate all marital debt to husband and order him to pay it to wife or directly to creditors). A trial court may assign one spouse the primary duty to pay off the debt and hold the other spouse harmless on it. *Wright v. Wright*, 1 S.W.3d 52, 60 (Mo.App.1999).

■ "[T]he trial court is vested with broad discretion in determining how and in what manner marital debts should be divided, and we will not disturb that division absent a clear abuse of discretion." *Id.* Under the circumstances of this case, we find no abuse of discretion in the trial court's allocation of the marital debts. Point denied.

### Periodic, Modifiable Maintenance

■ Husband also says the trial court's judgment ordering him to pay Wife $1,500 monthly in modifiable maintenance was against the weight of the evidence and a misapplication of the law.

In assessing whether there is a need for maintenance, section 452.335.1 "requires the trial court to follow a two-part threshold test." *Taylor*, 244 S.W.3d at 810. Before awarding maintenance, the trial court first had to find that Wife: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. Section 452.335.1. Wife had the burden of establishing those threshold requirements. *Taylor*, 244 S.W.3d at 810.

Husband says the trial court erred in finding that Wife met those thresholds. We disagree. Wife claimed that she had $4,500 in monthly expenses. The evidence established that her entire net worth consisted of personal property valued at

$5,000. The marital home had been foreclosed upon, and, except for $9 in her bank account, none of the property awarded to her is income-producing. The record also showed that Wife was 59 years old and had been unemployed throughout the vast majority of her twenty-three-year marriage. She said her recent search for employment had been unsuccessful due to lack of a vehicle, lack of training, and the length of her unemployment. The court did not abuse its discretion in finding that Wife currently is incapable of supporting herself through employment.

After the court finds that the threshold test for maintenance has been satisfied, it then may consider the statutory factors relating to amounts and duration. *Id.* Section 452.335.2 instructs the court to consider all relevant factors, including but not necessarily limited to:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently[;]

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age and physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

█ Husband contends that the amount of maintenance is inappropriate. He points out that he had been unemployed for eight years and was being treated for cancer at the time of trial. He also says the parties' minimal assets do not justify such an award. He takes issue with the court's finding that he is capable of earning at least $40,000 per year, and he says the court erred in finding that Wife is incapable of employment.

We find no error in the amount of the award. As noted, Wife was awarded no assets from which to support herself. She has been unemployed for more than two decades, apparently by mutual agreement of the parties. She is left with few job skills and has been unable to obtain employment. Wife enjoyed a high standard of living during most of the parties' marriage, which included living in a million dollar home. At the time of trial, Wife was age 59, unemployed, and had $4,500 in monthly living expenses.

█ The court also did not abuse its discretion in imputing a $40,000 salary to Husband. There was evidence from which the court could have found that Husband was capable of earning substantial income but, because of a stubborn refusal to work for anyone else, had chosen to remain unemployed after his business failed. "In proper circumstances, a trial court may impute income to a party according to what that party could earn by using best efforts to gain employment suitable to [his] capabilities." *Taylor,* 244 S.W.3d at 813. One such circumstance is when a party voluntarily reduces his income without justification. *Id.*

A trial court is granted broad discretion in awarding maintenance. *Adams v.*

*Adams,* 108 S.W.3d 821, 827 (Mo.App. 2003). The party challenging the award must show that it constituted an abuse of discretion. *Id.* Based on our analysis of the relevant statutory factors and the evidence presented at trial, we cannot say that the trial court abused its discretion in awarding Wife $1,500 per month in modifiable maintenance. Point denied.

### Non–Modifiable Maintenance

■■■ Husband contends that the trial court erred as a matter of law in entering a judgment for non-modifiable maintenance in the total amount of the marital debts or $1,735,000. He argues that such an award is not the proper use of maintenance under section 452.335.

The trial court awarded Wife "a judgment of non-modifiable maintenance for the total amount of the debts for which [Husband] and [Wife] are both liable in the amount of $1,735,000 ... to be satisfied upon payment of the debts by [Husband]." The court further ordered that the "award of non-modifiable maintenance is in the nature of spousal support for [Wife] and as such is therefore non-dischargeable in bankruptcy."

■■■ Husband's claim that this is an improper use of maintenance is well taken. "Maintenance should not be used as a mechanism to distribute marital property." *Fisher,* 278 S.W.3d at 734. In *Cates v. Cates,* 819 S.W.2d 731 (Mo. banc 1991), the Court held that a "maintenance in gross" award or a lump sum judgment for maintenance "is no longer recognized as a tool for providing economic sustenance under Section 452.335[.]" *Fisher,* 278 S.W.3d at 734. The Court explained:

> Because maintenance is founded on need, a maintenance award may extend only so long as the need exists. As the statute is cast, therefore, it would make little sense for the law to countenance a lump sum or "gross" award based on need which was not subject to modification. Thus, the dissolution of marriage statutes appear to contemplate a lump sum or gross payment only as a division of property.

*Id. (quoting Cates,* 819 S.W.2d at 735).

Husband says the trial court in this case was attempting to distribute marital debt by way of a maintenance award. This is inappropriate, he says, because it ignores the statutory purpose of maintenance, *i.e.,* to provide for the receiving spouse's actual needs. Wife appears to concede that such an award would be inappropriate but says that this award "was *not* in the nature of an award of support" (emphasis added) (even though the judgment clearly states that it is). Rather, Wife says, it was intended to enforce the court's property division (specifically the allocation of debt) and to insure that Wife is not harassed by Husband's creditors.

Several cases have dealt with similar situations. In all of those cases, the courts have unequivocally held that an order for payment of debt in a dissolution decree should not be characterized as maintenance where it is actually an aspect of the property division. *See, e.g., Evans v. Evans,* 45 S.W.3d 523, 528 (Mo.App.2001). These cases have resolved the problem in a variety of different ways based upon their own unique set of circumstances.

In *Taylor,* 244 S.W.3d at 808–10, and *Jamison,* 828 S.W.2d at 378–79, for example, where the lower courts had awarded "maintenance in gross" to be satisfied by the husband paying off the couple's debts, the appellate courts found that the clear intent was *not* to award maintenance but, rather, to equitably distribute the property. In both cases, the courts affirmed the judgments as modified and remanded with instructions to strike the words "mainte-

nance in gross" from the judgment. *Id.* On the other hand, in *Al–Yusuf,* 969 S.W.2d at 786–87, and *Evans,* 45 S.W.3d at 528–29, the trial court's intent was less clear. Those courts remanded with instructions for the trial court to clarify whether its award of "lump sum maintenance," "non-dischargeable in bankruptcy," "to be satisfied upon payment of the debt," was actually intended as an aspect of the property division, and, if so, then not to label it "maintenance." *Id.*

In *Schuh v. Schuh,* 271 S.W.3d 35, 38 (Mo.App.2008), the court took a different approach. There, the appellate court found that the lower court's award of "lump sum maintenance" clearly was simply an attempt to equitably divide the marital property and award attorneys' fees. *Id.*[3] That court found "no abuse of discretion in the amount of the ... award" but said that the trial court should not have characterized it as "lump sum maintenance." *Id.* The *Schuh* court noted that it is authorized by Rule 84.14 to enter the judgment that the trial court should have entered. *Id.* The court, therefore, affirmed except to delete the term "lump sum maintenance" and to delineate "that $17,500 is a marital property award and that $6,142.50 is an [award of] attorney's fees[.]" *Id.* at 38.

In this case, it is clear to us that the trial court intended the allocation of the marital debts to be a part of the property division and that the intent of the non-modifiable maintenance award was to protect Wife from liability. We recognize that the court believed this was fair to Wife, and we do not disparage the court's desire. However, as is clear from the authorities discussed above, we cannot regard this characterization (non-modifiable mainte-

nance) as a proper use of the concept. Thus, we find that the approach taken in *Schuh* also is appropriate here. Rule 84.14 allows us to enter such judgment as the trial court ought to give. *Id.* After reviewing the record and judgment in this case, we believe that "modifying the trial court's judgment will promote judicial economy as well as save time and expense for the parties and the trial court." *Id.* Consequently, pursuant to Rule 84.14 we modify the judgment to strike the language granting Wife non-modifiable maintenance in the amount of the marital debt ($1,735,000), and affirm the judgment in all other respects.

### Conclusion

The judgment provision granting Kathryn Sabatino non-modifiable maintenance in the amount of $1,735,000 is vacated. The judgment is affirmed in all other respects. Each party shall be responsible for its own costs on appeal.

All concur.

---

**3.** Though the maintenance award in *Schuh* did not deal with the allocation of marital debt, the effect is the same.