**Tracie L. DAWSON, Appellant,**

v.

**James R. DAWSON, Respondent.**

No. WD 73385.

Missouri Court of Appeals,
Western District.

May 15, 2012.

108

Tracie L. Dawson, Appellant pro se.

R. Gregory Harrison, Liberty, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and JOEL P. FAHNESTOCK, Special Judge.

CYNTHIA L. MARTIN, Judge.

Tracie Dawson ("Mother") appeals from the trial court's amended judgment order of modification retroactively modifying James Dawson's ("Father") child support obligation and ordering Mother to pay Father $19,305.00 in overpaid child support. Mother claims the trial court erred in calculating the overpayment. We exercise our power pursuant to Rule 84.14[1] to modify the trial court's judgment to reflect an offset against Father's child support overpayment by Father's child support arrearage. We affirm the judgment in part, and reverse and modify the judgment in part.

## Factual and Procedural History[2]

In 2000, a judgment decree of dissolution of marriage ("Decree") was entered pursuant to which Father was ordered to pay Mother monthly child support in the amount of $1,688.00 for the support of their two minor children.

On January 27, 2005, a judgment order of modification ("2005 Modification") was entered modifying Father's child support obligation to $820.00 per month effective February 1, 2005. The 2005 Modification reflected the terms of the parties' settlement, which included an agreement that Father had a child support arrearage of $25,016.00. The 2005 Modification also reflected the parties' agreement about how the arrearage would be paid. Father was to pay $9,000.00 by Discover check card on February 1, 2005; $4,500.00 on or before

---

1. "Rule 84.14 permits the appellate court to enter the judgment the trial court should have given." *Hogan v. Bd. of Police Comm'rs of Kansas City*, 337 S.W.3d 124, 136 (Mo.App. W.D.2011).

2. "We view the facts in the light most favorable to the judgment." *Young v. Pitts*, 335 S.W.3d 47, 50 n. 4 (Mo.App. W.D.2011).

June 30, 2005; $5,758.00 at the rate of $120.00 per month for 48 months beginning July 31, 2005; with the balance of $5,758.00 "[to] be held in abeyance and . . . forgiven unless Father fails to pay child support timely[.]" The 2005 Modification specified objective criteria to be applied to determine whether Father failed to pay child support timely for purposes of triggering his obligation to pay the amount held in abeyance.

In early 2006, Father sustained an injury to his knee requiring surgery. Following surgery, Father was no longer able to perform duties associated with his work such as lifting, squatting, and stooping. Father was unemployed for a period of time. Father continued to make partial child support payments, but did not consistently pay $820.00 a month.

On February 26, 2007, Father filed a motion to modify child support.[3] In response to Father's motion to modify, Mother filed an answer to Father's motion, a motion for modification of child support, and a motion for contempt addressing Father's child support arrearage.

On July 9, 2007, Father obtained employment as the director of a community outreach program for homeless intervention. In that position, Father makes approximately $1,600.00 per month.

A bench trial on Father and Mother's motions was held on June 1, 2010 and August 3, 2010. At trial, Father introduced evidence in support of a significant reduction in his child support obligation, and asked that any reduction be ordered retroactive to July 2007. Father intro-

duced a child support enforcement printout of his child support obligation and payment history current to June 1, 2010 (Exhibit 7), and acknowledged on direct examination that as of June 1, 2010, he was in arrears for child support in the amount of $11,877.33, an amount which included the $5,758.00 sum held in abeyance pursuant to the 2005 Modification. Father introduced evidence to demonstrate that he had complied with the arrearage payment provisions set forth in the 2005 Modification, and argued that per the terms of the 2005 Modification, he was entitled to a determination that the abeyance amount was not owed.

On cross-examination of Father, Mother's counsel also introduced a printout reflecting Father's child support obligation and payment history (Exhibit 10)[4] which was identical to Father's Exhibit 7 except that it was only current through March 10, 2010. Father acknowledged that the exhibit reflected that in January 2005, his child support arrearage was credited by $12,641.46, and that the remaining balance of his arrearage in the stipulated amount of $25,016.00 was included in the 2005 Modification.

Mother testified on August 3, 2010, about Father's child support payment history from January 2005 through early 2007. Referring to Exhibit 10, Mother testified that in January 2005, she agreed to permit Father a $12,641.46 credit against his child support arrearage. Mother testified that Father's remaining arrearage of $25,016.00 was the amount the parties agreed Father would be or-

---

3. The Decree and the 2005 Modification were entered in the Cass County Circuit Court. Shortly after Father filed his motion to modify, the matter was transferred to Clay County Circuit Court pursuant to a stipulated change of venue.

4. Mother has not deposited any of the exhibits offered into evidence at trial as permitted by Rule 81.12(e). We have thus not been afforded the benefit of review of either Exhibit 7 or Exhibit 10, and rely exclusively on the parties' testimony about the contents of those exhibits reflected in the trial transcript.

dered to pay in the 2005 Modification. Mother testified that Father did make the $9,000.00 and the $4,500.00 arrearage payments required by the 2005 Modification prior to June 30, 2005, and that Father made a payment of $820.00 in February 2005, and a payment of $9,210.00 in April 2005. Father had previously testified by reference to Exhibit 10 that he also made an $820.00 payment in June 2005.

On November 3, 2010, the trial court entered its Judgment Order of Modification ("Judgment") finding that "there has been a change in circumstances so substantial and continuing in nature as to make the terms of the original [Decree] and the subsequent [2005 Modification] thereto unreasonable." The trial court found that Father had suffered physical injuries that reduced his ability to earn gainful employment such that he is incapable of earning the amount of income he previously earned. The trial court rejected the Form 14s presented by both parties, rejected the trial court's own Form 14 as unjust and inappropriate, and retroactively determined that "beginning July 1, 2007, [Father's] child support obligation to [Mother] should be reduced to $325.00 per month[.]"

With regard to child support arrearages, the trial court found that between January 2005 and June 2005, Father was required to pay $25,016.00 in total arrearages; that between January 2005 and June 2005, Father's total obligation including arrearages and ongoing child support was $29,936.00, and that during the same period of time

Father actually paid Mother $37,069.46 in child support. The trial court then found that "any and all arrearages owed by [Father] to [Mother] resulting from the [2005 Modification] and any arrearages accumulated thereafter, is [sic] deemed satisfied and paid in full."

The trial court denied Mother's motion for contempt as it related to Father's non-payment of child support and child support arrearage, but granted Mother's motion for modification in part by granting Mother a judgment against Father in the amount of $2,643.56 for unpaid medical and tutoring expenses.

Finally, the trial court found that the retroactive modification of Father's child support obligation had resulted in Father's "overpayment" of child support in the amount of $19,305.00.[5] The trial court entered judgment in favor of Father and against Mother in the amount of the overpayment.

Mother filed a "Motion for Reconsideration, New Trial and Amendment of Judgment," in which Mother claimed that the trial court improperly credited Father with payment of the amount of $12,641.46. Mother also complained that Father had not paid the full amount of the $25,016.00 arrearage set forth in the 2005 Modification, and owed the abeyance amount of $5,758.00. Finally, Mother complained that the trial court had not reduced the $19,305.00 child support overpayment by the amount Father owed in child support as of the time of trial.

---

**5.** Although not explained in the judgment, it appears that the amount of the judgment entered in Father's favor was calculated for the time period from July 1, 2007 through September 2010, a period of thirty-nine months. Father's previous obligation amount of $820.00 less the modified amount of $325.00 leaves $495.00 which, when multiplied by thirty-nine months, equals $19,305.00. On August 3, 2010, the last day of trial, the trial court ordered Father to prepare a judgment within thirty days, likely explaining why the calculation set forth in the judgment appears to have included September, 2010. Both parties admitted at oral argument that the amount of the judgment was, in fact, calculated in this manner.

Father also filed a motion to amend the trial court's Judgment, though Father's motion is not included in the record on appeal. After a hearing,[6] Mother's post-trial motion was denied and Father's post-trial motion was granted. As a result, on January 13, 2011, the trial court entered its Amended Judgment Order of Modification ("Amended Judgment")[7] which did not change the amount of the monetary judgments owed by and between Mother and Father, but which added: the case number of the original Decree; instruction that the Cass County Circuit Court records should be changed to reflect the retroactive reduction of Father's child support obligation; clarification that any arrearages resulting from or addressed in *either* the Decree or the 2005 Modification, "and any arrearages accumulated thereafter as a result of either case, are hereby deemed satisfied and paid in full;" and instruction that the Cass County child support records should be changed to reflect that Father owes no child support arrearage as of the date of the Amended Judgment.

Mother appeals *pro se.*

## Standard of Review

■ " 'The standard of review in a court tried case, including one pertaining to modification of child support, is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).' " *Cross v. Cross*, 318 S.W.3d 187, 189 (Mo.App. W.D.2010) (citation omitted). We will affirm the trial court's judgment " 'unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' " *Id.* at 189–90 (citation omitted). " 'A trial

court is free to believe or disbelieve all, part or none of the testimony of any witness.' " *Id.* at 190. (citation omitted). We defer to the trial court's determination of the credibility of the witnesses. *Id.* " '[T]he evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment.' " *Id.* (citation omitted).

## Analysis

Mother does not challenge the trial court's decision to reduce Father's child support obligation to $325.00 per month retroactive to July 2007. Mother does not contest that, as a result, Father's child support obligation from July 2007 through September 2010 was reduced by the amount of $19,305.00.

■ Mother does complain in her single point on appeal that in calculating the judgment to be entered against her for Father's reduced child support obligation, the trial court made a "clerical error in simple math" because "the amount of $325 retro to July 2007 ($13,000) [less] total payments received ($34,143.30) less the total arrears as of June 2007 ($14,625.63) leav[es] a sum of $6,517.67 to be due by [Mother], not $19,305." In making this argument, Mother claims the trial court erred in crediting Father with payment of the $12,641.46 amount she claims was a negotiated reduction in Father's child support arrearages in January 2005, and that the trial court erred in concluding that Father did not owe the abeyance amount of $5,758.00. Though couched as a "clerical error in simple math," Mother's point actually implicates whether the weight of the evidence supports the trial court's calculation of the Amended Judgment en-

---

6. A transcript from this hearing has not been included in the record on appeal.

7. Mother's appendix includes the original judgment, but fails to include the Amended Judgment, in violation of Rule 84.04(h).

tered in Father's favor, and the trial court's related determination that all of Father's child support arrearages had been paid.

First, Mother argues the trial court erroneously treated the amount of $12,641.46 as a payment by Father when it was really an agreed credit she permitted Father in connection with the 2005 Modification. Mother argues it is unreasonable and unjust that the Amended Judgment "is essentially asking [Mother] to owe that amount back to [Father]."

■ The genesis of Mother's argument is the trial court's finding in the Amended Judgment that Father paid a total of $37,069.46 in child support from January 2005 through June 2005 "as is shown on Exhibit 10." Mother has not submitted any of the exhibits introduced at trial[8], including Exhibit 10, making it more difficult for us to determine whether the trial court correctly calculated Father's payments from January 2005 through June 2005. However, the unchallenged testimonial evidence by Father and Mother about the contents of Exhibit 10 was that Father was *credited* $12,641.46 in January 2005 against his then existing child support arrearage, leaving the agreed upon arrearage of $25,016.00 reflected in the 2005 Modification, and that Father thereafter *paid* $24,350.00[9] between entry of the 2005 Modification and June 30, 2005. The sum of $12,641.46 and $24,350.00 is $36,991.46 ($78.00 less than the $37,069.46 figure the trial court characterized as Father's total "payment" over the applicable period of time). It does appear possible, therefore, that the trial court erroneously believed that Father actually *paid* the amount of $12,641.46, instead of simply being credited this amount by Mother as a part of the settlement which led to the 2005 Modification. We do not have the benefit of Exhibit 10 to confirm this fact, however. We cannot definitively conclude, therefore, that the trial court committed error in this regard. Rule 81.16(c); *U.S. Bank v. Lewis,* 326 S.W.3d 491, 496 (Mo. App. S.D.2010) (exhibits omitted from the record on appeal may be treated as either immaterial or as supporting the trial court's judgment).

Even if the trial court erroneously characterized the $12,641.46 sum as a payment by Father, and not as a credit afforded Father, that error played no role in the calculation of Father's judgment in the amount of $19,305.00. The judgment amount was calculated by simply subtracting the reduced retroactive child support award from what Father originally owed from July 2007 through September 2010.[10] Moreover, because the $12,641.46 credit

8. In Mother's brief, she makes reference to exhibits she attached to her Motion for Reconsideration, New Trial and Amendment of Judgment. Those exhibits include a "Payment Detailed History Report" from Cass County, an excel spreadsheet prepared by her counsel on the subject of Father's child support arrearage at the time of trial, and an affidavit of Brenda Strodtman, an employee of the Cass County prosecutor's office. These documents were not admitted into evidence at trial, and cannot be considered by us in evaluating the propriety of the trial court's Amended Judgment.

9. This amount is derived from Father's and Mother's collective testimony about the contents of Exhibit 10, and includes a $9,000.00 payment in February or March, 2005, an $820.00 payment in February 2005, a $9,210.00 payment in April 2005, an $820.00 payment in May 2005 and a $4,500.00 payment in June 2005.

10. The trial court's characterization of the difference as an "overpayment" is not technically accurate, as the characterization presumes Father was completely current on his child support payments at the time of trial, despite Father's admission that he was, in fact, in arrears.

was applied to Father's arrearage *prior* to entry of the 2005 Modification, the credit is irrelevant to calculation of Father's child support obligation accumulating *after* the 2005 Modification.

Though not well explained, it seems Mother may be arguing that because she "forgave" $12,641.46 of Father's child support arrearage in connection with the stipulated entry of the 2005 Modification, she should now get credit for the forgiven amount against the judgment awarded Father for "overpaid" child support. Mother offered no evidence to suggest that her forgiveness of $12,641.46 in arrearages was conditional. In contrast, the 2005 Modification fully and finally determined that the amount of Father's arrearage as of January 31, 2005 was $25,016.00. The 2005 Modification made no reference to an additional arrearage of $12,641.46. Mother's suggestion that Father's judgment against her should be reduced by an additional arrearage of $12,641.46 constitutes an impermissible collateral attack on the 2005 Modification. *Barry, Inc. v. Falk,* 217 S.W.3d 317, 320 (Mo.App. W.D.2007); *Reid v. Steelman,* 210 S.W.3d 273, 282 (Mo.App. W.D.2006).

■ Next, Mother argues that the trial court erred in concluding that Father did not owe the abeyance amount of $5,758.00, and thus erred in failing to reduce the amount of Father's judgment against her by that sum. Mother's argument ignores that at trial, Father put on evidence suggesting that he had complied with the payment terms set forth in the 2005 Modification relating to the $25,016.00 arrearage, and that he was thus entitled to a reduction in his acknowledged child support arrearage as of the time of trial by the abeyance amount. Though the evidence

was contested on this point, the trial court was free to accept Father's evidence and to reject Mother's evidence. *Cross,* 318 S.W.3d at 190. Given the trial court's express finding in its Amended Judgment that *all arrearages resulting from the 2005 Modification* "are hereby deemed satisfied and paid in full," we must assume the trial court accepted Father's evidence that he had earned a credit for the abeyance amount of $5,758.00. *Id.* We cannot conclude on this record that the trial court's finding is against the weight of the evidence. *Id.*

■ Finally, Mother argues that the trial court otherwise failed to reduce Father's judgment against her by the amount of child support Father owed at the time of trial. On this subject, Father testified on the first day of trial as follows:

Q: (by Father's counsel) I'm going to hand you what has been marked as [Father's] exhibit number 7 and ask you if that is a printout that you received this morning down in the child support department.

A: That is correct.

Q: And it shows that you have an arrearage of about $11,877.33, is that correct?

A: Yes, sir.

Q: Do you disagree in any way with that arrearage? We're going to talk about some other calculations, but you agree that's what you owe?

A: That's what that states, yes.

Q: As of today?

A: Yes.

When the bench trial continued on August 3, 2010, neither party testified about "updated" arrearage amounts.[11] Near the

---

11. In Mother's "Motion for Reconsideration, New Trial and Amendment of Judgment," Mother attaches as "Exhibit A" a document

she claims to be identical to her Exhibit 10 at trial. This cannot be, however. Exhibit A is a child support payment record current

conclusion of Mother's direct examination, Mother testified that she was asking for "a judgment for child support arrears ... [i]n that [Father] has not paid the total amount of child support arrears that was ordered in the 2005 Modification." On cross-examination, Mother testified as follows:

Q: (by Father's counsel) Okay. Do you know what the child support arrearage you claim that [Father] owes today?

A: Not without it in front of me, no, I don't.

Q: Do you have anything that tells you that?

A: The printout from child support enforcement is the only thing I would have to go by.

Q: So, you would agree with the child support, the exhibit we have in evidence that says it's eleven thousand and some odd dollars?

A: I mean, it's tough for me to answer that. I'm sorry, Mr. Harrison. I know it's over $10,000, yes.

Both parties testified, therefore, that Father's child support arrearage was, as of the date of trial, as represented on the "child support enforcement printout."

The printout introduced by Father (Exhibit 7) was current through June 1, 2010, and conceded an arrearage of $11,877.33. As previously discussed, this arrearage included the abeyance of $5,758.00 which the trial court credited Father. Applying this credit leaves an arrearage as of June 1, 2010 in the amount of $6,119.33.

■ Father's testimony that he owed an arrearage of child support in the amount of $11,877.33 less the $5,758.00 credit he

felt he had earned constitutes a judicial admission that Father was in arrears in child support as of the time of trial in the amount of $6,119.33. "A judicial admission is an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true." *Moore Automotive Group, Inc. v. Goffstein*, 301 S.W.3d 49, 54 (Mo. banc 2009). "Judicial admissions are generally conclusive against the party making them." *Id.*

The trial court found in the Amended Judgment that "any arrearages accumulated" after entry of the 2005 Modification "are hereby deemed satisfied and paid in full." Father's judicial admission conclusively negates the trial court's ability to make this finding. In fact, no evidence in the record suggests that Father paid the $6,119.33 difference between the $11,877.33 he admitted that he owed as of June 1, 2010 and the $5,758.00 credit he sought for the amount held in abeyance.

As we have previously noted, relying on Exhibit 10, the trial court found that Father "paid" $37,069.46 in child support for the period from January 2005 through June 2005 when only $29,936.00 was owed. As we discuss, *supra*, the $37,069.46 "payment" amount necessarily included the $12,641.46 sum Mother characterized as a pre–2005 Modification credit afforded as an accommodation to settlement. The trial court's belief that Father paid $37,069.46 between January 2005 and June 2005 might have led the trial court to conclude that Father "overpaid" $7,133.46 during this six month period,[12] an amount

---

through September 2010. Mother's Exhibit 10 at trial was represented as current through its print off date of March 10, 2010. Mother's Exhibit A to her post-trial motion was not admitted into evidence, and could not have been considered by the trial court.

12. If this was the trial court's conclusion, the conclusion was likely erroneous. As previously discussed, the calculation of Father's total payment appears to have included $12,641.46 which both Father and Mother testified was not a payment, but a negotiated credit.

sufficient to negate the $6,119.33 difference between Father's admitted $11,877.33 arrearage at the time of trial and the credit of $5,758.00 Father argued he should be afforded against this arrearage. Although this likely explains the trial court's conclusion that all of Father's arrearages since the 2005 Modification should be deemed satisfied and paid in full, the conclusion is patently erroneous. The $12,641.46 amount, whether characterized as a "credit" afforded by Mother, or a "payment" made by Father, was necessarily and indisputably applied to reduce Father's then existing arrearage *before* entry of the 2005 Modification, and thus could not under any circumstances have been considered by the trial court to determine that all of Father's *post*–2005 Modification arrearages had been satisfied and paid in full. Father, in fact, never advanced this argument at trial, and instead admitted that he owed a child support arrearage at the time of trial in excess of the $5,758.00 credit Father sought.

In short, Father is not entitled to the windfall of characterizing the totality of his retroactively reduced child support obligation ($19,305.00) as an "overpayment" when it is self-evident by Father's admission at trial that he had not paid all of the child support he owed from and after the 2005 Modification. In light of Father's judicial admission that even presuming award of a credit of $5,758.00, he was still in arrears in the amount of $6,119.33 as of the time of trial, the trial court erred in failing to reduce the $19,305.00 judgment awarded Father for "overpaid" child support by Father's outstanding arrearage. Point is denied in part, and granted in part.

## Conclusion

The trial court's Amended Judgment is affirmed in part and reversed and modified in part.

Pursuant to our authority under Rule 84.14, we have the power "to enter such judgment as the trial court ought to give." *Sabatino v. Sabatino*, 314 S.W.3d 854, 862 (Mo.App. W.D.2010). We believe that the exercise of that authority in this case would "promote judicial economy as well as save time and expense for the parties and the trial court." *Id.* Accordingly, we reverse and modify paragraph 6 of Section XVII of the Amended Judgment to reduce the judgment entered in favor of Father and against Mother to the amount of $13,185.67, calculated by subtracting Father's admitted child support arrearage ($6,119.33) from the reduction in Father's child support obligation from July 2007 through September 2010 ($19,305.00).

In all other respects, the Amended Judgment is affirmed.

All concur.